FRANCES BEDNAR, Plaintiff-Appellant, v. COMMONWEALTH EDISON, Defendant-Appellee.

Third District   No. 3—86—0642

Opinion filed June 2, 1987.

Emmanuel F. Guyon, of Streator, for appellant.

T. Donald Henson, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle (Robert M. Hansen, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Frances Bednar, sued Commonwealth Edison for personal injuries allegedly suffered as a result of tripping over a utility pole that was lying on the boulevard in front of a neighbor's residence. Following a trial in the circuit court of La Salle County, the jury returned a general verdict for defendant. Plaintiff appeals from the verdict and from the denial of her post-trial motion. We affirm.

Evidence adduced at trial established the following facts. In the early evening of Saturday, October 29, 1983, plaintiff was walking

along the street on Laura Avenue, Streator, between her own home and that of a neighbor, Carol Hoskins. Plaintiff was returning a catalog that she had borrowed. According to plaintiff, it was a cool, clear and dark evening. She proceeded down the middle of the street because there were no city sidewalks or curbs in that neighborhood. She did not notice whether or not the streetlight on the utility pole standing midway between her home and the Hoskins' was lit at the time. Plaintiff testified that when she reached the point across from the Hoskins' front door, she made a right-angle turn and proceeded onto the grassy boulevard toward the Hoskins' front sidewalk. Plaintiff then fell, hitting her chest on the defendant's utility pole, which had been laid off along the boulevard perpendicular to the Hoskins' sidewalk. As a result of the fall, plaintiff suffered fractures to her wrist and two ribs.

According to the record the 45-foot utility pole in question was laid off by defendant's employees on Friday, October 28, 1983, and was to be installed at a later date. The boulevard area contained gravel and mowed grass. The diameter of the pole ranged from 16 inches at the butt end to eight inches at the top. No signs or special warning devices were placed around the area where the pole lay, and no effort was made by defendant's employees to personally notify residents of the neighborhood that the pole was there.

Bernard Jonen, defendant's construction foreman, testified that he checked the site of the accident on Monday evening, October 31. At that time the streetlight was lit on the utility pole standing within 10 feet of one end of the laid-off pole. Jonen had been employed with Commonwealth Edison for 37 years. He testified that it was not the practice of the defendant utility company to provide any warning devices around poles laid off along the shoulder of a street, such as the one in question. To his knowledge, no utility or construction industry practice required the placing of barricades or warning devices under similar circumstances.

Richard Hoekstra, a lineman for defendant who had participated in laying off the pole in question, corroborated Jonen's testimony that no flags, flashes or barricades were generally used to warn of poles laid off prior to being set.

Photographs of the accident scene display a large, dark brown utility pole lying in the grassy area between the gravel at the edge of a paved street and the lawns of the Hoskins home and the home next door. The daytime photographs show that the pole was clearly visible and unobstructed where it lay.

In addition to the foregoing, plaintiff attempted to place into evidence expert testimony by photographer Arthur Sala for the purpose

of comparing light meter readings in the area where plaintiff fell. However, after an offer of proof, the trial court sustained defendant's objection to the testimony on the ground that Sala's tests, which were conducted at 10 p.m. in June of 1986, were not shown to have been made under conditions similar to those which existed at the time of plaintiff's fall in October of 1983.

At the close of plaintiff's case in chief, both parties rested. Defendant moved for and was granted a directed verdict on count II of plaintiff's complaint, charging a violation of the Public Utilities Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 5—201, as amended). Plaintiff was then granted leave to amend her complaint to add count III, charging wilful and wanton misconduct. Defendant moved for and was granted a directed verdict on this count as well. The matter proceeded to closing argument and jury instructions on count I, charging common law negligence, only.

In this appeal, plaintiff raises seven issues for our consideration: (1) whether utility companies are held to a "high degree of care" in installing utility poles; (2) whether defendant owed a duty to exercise a high degree of care by virtue of the Illinois Commerce Commission's General Order 160; (3) whether defendant owed a duty to provide warnings by virtue of its own work rules; (4) whether the trial court erred in directing a verdict for defendant on count II of plaintiff's complaint; (5) whether the trial court erred in refusing to admit testimony by plaintiff's expert witness; (6) whether the trial court improperly sustained an objection raised by defense counsel during plaintiff's closing argument; and (7) whether two jury instructions tendered by defendant were improperly given.

In her first three issues, plaintiff appears to contend that the trial court should have found that defendant breached a duty owed to plaintiff as a matter of law or that the court erred when it refused plaintiff's instruction 12 to the effect that defendant owed a duty to exercise a high degree of care.

Plaintiff's tendered instruction 12 read as follows:

"It was the duty of defendant Commonwealth Edison Co. under Count I of the complaint, before and at the time of the occurrence, to exercise a high degree of care for the safety of plaintiff Fran Bednar in connection with the distribution of electrical energy because the risk is great."

Defense counsel objected to the instruction. The objection was sustained, and at the court's request plaintiff replaced it with plaintiff's instruction 12A. The instruction given to the jury closely tracks Illinois Pattern Jury Instruction, Civil, No. 10.04 (2d ed. 1971) (hereinafter IPI

Civil 2d):

> "It was the duty of Defendant Commonwealth Edison Co., before and after the time of the occurrence, to use ordinary care for the safety of the plaintiff Fran Bednar. That means it was the duty of the defendant to be free from negligence."

In addition, the jury was given plaintiff's instructions 9 and 10 (IPI Civil 2d Nos. 10.01, 10.02) defining ordinary care and negligence.

██ █ Plaintiff contends that defendant, as a public utility engaged in the distribution of electrical energy, owed a special duty for her protection. (*German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 451 N.E.2d 903, 908.) The injury suffered by plaintiff in *German* resulted from contact between the metal fork of the hoist plaintiff was operating and defendant's high voltage electrical lines. Plaintiff's jury instruction on a high degree of care owed by the public utility was there given over defendant's objection. On appeal, the court observed that "the general rule in this country [would appear to be] that a power company is held to a high degree of care *in connection with the distribution of electrical energy.*" (Emphasis added.) The court stated that, "[c]onsidering the dangerous nature of electricity, the 'circumstances' [there] present, reasonable care would seem to be the same as a high degree of care." (115 Ill. App. 3d 977, 985, 451 N.E.2d 903, 909, citing 32 A.L.R.2d 244, 247 (1953).) Relying on analyses by Professor Prosser (W. Prosser, Torts sec. 34, at 180-81 (4th Ed. 1971)) and *Austin v. Public Service Co.* (1921), 299 Ill. 112, 132 N.E. 458, the court concluded that, while "it would have been proper to instruct the jury in the language of the Illinois Pattern Jury Instructions [IPI Civil 2d No. 10.01]," the instruction given to the jury in that case "was an accurate statement of the law *** [and] was not likely to mislead the jury."

We find *German* inapposite to the case before us because the act or omission complained of there related directly to the distribution of electrical energy and maintenance of defendant's high voltage lines. By contrast, here we are concerned with defendant's construction activities which were merely preparatory to the dangerous operation of disconnecting the overhead lines from the old pole and reconnecting them to the pole that plaintiff fell over. Plaintiff did not allege injury by reason of defendant's "hazardous enterprise." She alleged only that defendant negligently left its pole along the roadside "without adequate guards, warnings or other devices that would forewarn pedestrians" of where it lay.

It would be unreasonable to charge defendant with a high degree of care in every aspect of its business operations merely because its *raison d'etre* is the distribution of electricity. Rather, as stated by Profes-

sor Prosser, "[t]he amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it." (W. Prosser and W. Keeton, Torts sec. 34, at 208 (5th ed. 1984).) The danger here was that someone might not see the pole and would be injured in a fall over or on it. There was no danger that a person could be electrocuted by the pole. In our opinion, where it is apparent that a publicly-owned boulevard is used for pedestrian or vehicular purposes a land user/occupier owes a duty to exercise ordinary care for the protection of the public. See *Carroll v. Lily Cache Builders, Inc.* (1979), 74 Ill. App. 3d 264, 392 N.E.2d 986, citing Restatement (Second) of Torts sec. 367 (1964) for rule that possessor of land "is subject to liability for physical harm suffered by plaintiff upon a finding that *** injuries were attributable to defendant's failure to exercise reasonable care to maintain the [private roadway] in a reasonably safe condition for pedestrian traffic."

In *Carroll*, the plaintiff was injured when she fell into a hole in defendant's roadway during a heavy thunderstorm. On appeal, defendant argued that it owed only a duty to refrain from wilful and wanton misconduct because plaintiff had the status of licensee. This court disagreed, concluding that defendant's liability to plaintiff as an invitee was, under the circumstances there presented, a question of fact for the jury, as was the issue of plaintiff's contributory negligence.

■ In our opinion, defendant here was subject to liability under the same circumstances as was the defendant land developer in *Carroll*. The question for the jury here was whether defendant breached its duty to exercise ordinary care for the protection of plaintiff. We hold that the trial court committed no error in refusing plaintiff's instruction 12 on a high degree of care. In this case, unlike *German*, the tendered instruction would only have confused the jury; and, under the circumstances presented by the evidence, it would not have been an accurate statement of the law.

■ We have reviewed plaintiff's contentions that defendant owed a special duty by virtue of General Order 160 of the Illinois Commerce Commission and defendant's own work manual—plaintiff's exhibits 9 and 13, respectively. General Order 160 details the Commission's "rules for construction of electric power and communication lines." In our opinion, the rules alluded to either were not shown to have been violated or were not shown to have contemplated the harm suffered by plaintiff under the circumstances here. (See W. Prosser and W. Keeton, Torts sec. 36, at 225 (5th ed. 1984); *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709 (court held that Illinois

Commerce Commission rules not intended for benefit of lineman injured when he fell from obviously decayed utility pole).) Plaintiff was permitted to argue that defendant owed a duty to warn of the existence of the pole laid off along the boulevard. However, neither the General Order nor defendant's work manuals specifically required such. The jury, on the basis of the evidence adduced at trial, was free to determine that the pole was an obvious danger and that plaintiff's injuries were the result of her own inattention—not defendant's failure to warn.

Next, we consider plaintiff's argument that the trial court erred in directing a verdict for defendant on count II, charging a violation of the Public Utilities Act. (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 5—201.) The Act provides that a public utility is liable for any act or omission done in violation of any provision of the Public Utilities Act, or any rule, regulation or order of the Commerce Commission. It allows plaintiff to recover, in addition to actual damages, punitive damages and reasonable attorney's fees.

■ General Order 160 requires in section 200 that defendant carry on its construction activities in accordance with "accepted good practice for the given local conditions." In section 211, it requires defendant to install and maintain its lines and equipment "so as to reduce hazards to life as far as practicable." The only evidence that was introduced here relative to the standard of good practice for the laying off of utility poles was testimony by defendant's employees, Jonen and Hoekstra. According to these witnesses, warnings were not required under the circumstances of this case. As indicated above, we do not find that the duty to reduce "hazards to life" as far as practicable was intended to apply to the defendant's conduct here. Even when viewed in its aspect most favorable to plaintiff, we find that the evidence with respect to count II so overwhelmingly favored defendant that no contrary verdict based on the evidence could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Under these circumstances, the trial court properly entered a directed verdict for defendant on count II.

■■ We turn next to plaintiff's argument that the court erred in refusing to admit testimony by photographer Sala. As a general rule, the admission of experimental evidence is within the sound discretion of the trial court, and the trial court's determination will not be disturbed on appeal absent a clear showing that that discretion has been abused. (*Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 419 N.E.2d 1253.) We have reviewed the record of plaintiff's offer of proof. The proffered testimony was technical and demonstrative, but

failed to establish that the conditions as they existed when plaintiff fell in October of 1983 were similar to those under which Sala's light meter experiment was conducted in June of 1986. As such, we cannot say that the testimony would have been helpful to the jury. Accordingly, we hold that the trial court did not abuse its discretion by excluding the experimental evidence.

■ Plaintiff's contention that the trial court erred in sustaining defense counsel's objection during plaintiff's closing argument is similarly unavailing. Counsel for plaintiff attempted to demonstrate during closing argument that a substantial award of damages in this case would have a minimal effect on the rate-payors' utility bills. Defense counsel objected to the line of argument on grounds that it was an improper "per diem" argument and "totally inappropriate under the circumstances." Having reviewed the argument, we do not find that the court erred in sustaining defendant's objection. Counsel's comments found no support in the evidence presented at trial. Moreover, the gist of the argument tended to appeal to any prejudices of the jurors toward the public utility and its vast resources. As such, the argument was unfair and was properly cut short by sustaining defendant's objection. See *Babcock & Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265 (argument emphasizing corporate nature of defendant held to be improper as tending to inflame prejudices of jury against corporations).

■ Lastly, we find no merit to plaintiff's argument that the trial court erred by giving defendant's jury instructions 5 and 7 (IPI Civil 2d Nos. 36.01, A45.05 (1971 and 1986 Supp.)). Defendant's position at trial was that defendant was not negligent in laying off the pole on the boulevard and leaving it there, unmarked, for later installation; or, in the alternative, that plaintiff's own inattention to where she was walking was the cause of her injuries. At the conference on instructions, plaintiff's counsel did not object to defendant's instructions 5 and 7, which accurately instructed on defendant's theories of defense. Under the circumstances, we find that plaintiff has waived any error (*Stephenson v. Dreis & Krump Manufacturing Co.* (1981), 101 Ill. App. 3d 380, 428 N.E.2d 190); and the trial court did not commit plain error by giving defendant's tendered instructions.

For these reasons, we affirm the judgment of the circuit court of La Salle County.

Affirmed.

HEIPLE and SCOTT, JJ., concur.