ELIZABETH CARROLL, Plaintiff-Appellee, *v.* LILY CACHE BUILDERS, INC., Defendant-Appellant.

Third District   No. 78-472

Opinion filed July 27, 1979.

Robert L. Speers, of Lindner, Speers and Reuland, of Aurora, for appellant.

Horwitz, Anesi, Ozmon and Associates, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Lily Cache Builders, Inc., the developer of a new subdivision, appeals from judgment for $3,700 entered upon a verdict in favor of Elizabeth Carroll, plaintiff, in a personal injury action.

The facts are not in dispute. In 1973 defendant constructed a house for Kenneth and Elizabeth Carroll located on a cul-de-sac in a new subdivision in Plainfield, Illinois. At the time the Carrolls moved in, construction of the cul-de-sac had not yet begun, but within a few days the circle was rough-graded with a bulldozer and the curbs were installed. Later a 10-inch layer of crushed stone would be laid followed by an asphalt finish. On July 27, 1973, the crushed stone layer had been placed on the street leading into the cul-de-sac, but no stone had yet been put on the circle itself. At that time, only two homes on the cul-de-sac were occupied: the one belonging to the Carrolls and one directly opposite owned by Mr. and Mrs. W. J. Burkhart. There were no sidewalks, and the only means of access to and from the two homes was across the cul-de-sac.

Early on the evening of July 27, 1973, plaintiff and her two small children crossed the circle to pay a social visit to their neighbors, the Burkharts. During the evening a terrible thunderstorm occurred with heavy rainfall which delayed plaintiff's return home until approximately 10:30 p.m. After the rain stopped she started home, carrying her three-

year-old daughter and leading her five-year-old daughter by the hand. The cul-de-sac was muddy and full of puddles which were visible from the light of the porch lights of the two houses and the intermittent flashes of lightning. As plaintiff tried to pick her way around the puddles, her left foot went into a hole, and she fell, breaking her ankle.

Plaintiff filed a personal injury action to recover damages. At the beginning of the jury trial, defendant admitted ownership of the cul-de-sac, and plaintiff's witnesses testified to the conditions and events as set out above. There was also testimony that other cul-de-sacs in the subdivision were completed before any houses located on them were occupied and that the only means of access to the homes of the Carrolls and the Burkharts was from the cul-de-sac or else through the yards of the homes. After the cul-de-sac was rough-graded, defendant's heavy trucks used the cul-de-sac to reach other construction sites. As a result there were ruts in the surface, as well as piles of dirt from excavations for the curbs and for basements of other houses under construction.

At the conclusion of plaintiff's evidence, defendant's motion for a directed verdict in favor of defendant was denied. Defendant presented no evidence, and the case was submitted to the jury which returned a verdict of $3,700 in favor of plaintiff. In answer to a special interrogatory, the jury found plaintiff not guilty of contributory negligence. The court entered judgment on the verdict, and defendant appeals.

Initially we note that the parties in the instant case do not have a vendor-vendee relationship as to the premises where plaintiff fell since defendant had retained ownership of the cul-de-sac. Hence, this case is to be distinguished from those involving the question of a vendor's liability to his vendee for harm caused by a dangerous condition on the premises which were sold. *E.g., Chapman v. Lily Cache Builders, Inc.* (1977), 48 Ill. App. 3d 919, 362 N.E.2d 811.

❋ 1 Defendant's first contention is that under the evidence, when plaintiff crossed the cul-de-sac, she had the status of a licensee as a matter of law, not an invitee, and therefore the trial court erred in refusing to direct a verdict for defendant. In cases involving premises liability in Illinois, a plaintiff's legal status at the time of injury is customarily a crucial factor because an owner of property owes to an invitee the duty to exercise reasonable care for her safety while the only duty owed to a licensee is a duty to refrain from wilful and wanton misconduct. (*Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 81 N.E.2d 866.) The traditional definitions of "invitee" and "licensee" were set out in *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87, 343 N.E.2d 261, 264, as follows:

> "An invitee is a person who goes upon the premises of another by an express or implied invitation to transact business in which he and the owner have a mutual interest or to promote some real or

fancied material, financial, or economic interest of the owner. [Citation.] A licensee is a person who goes upon the premises of another with the express or implied consent of the owner, to satisfy his own purposes rather than for the mutual benefit of himself and the owner or a purpose connected with the business in which the owner is engaged or permits to be carried on upon the premises."

*Trout* involved a motorcyclist who took a shortcut while riding with friends at 2 a.m. and ran into a chain strung across a bank parking lot. Since he was on a purpose of his own having no connection with the bank, the cyclist was held to be a licensee, not an invitee. Defendant argues that plaintiff here was also a licensee as a matter of law since she admittedly crossed the cul-de-sac for a social visit with friends and not for any purpose related to the business or benefit of defendant.

■■ As plaintiff points out, the modern trend is away from economic benefit as the exclusive test for determining invitee status upon the land of another. (*Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583, 274 N.E.2d 635; Annot., 95 A.L.R.2d 992, 1006 (1964).) It is argued that, even without evidence that plaintiff's use of the cul-de-sac would promote any economic benefit for defendant-owner, she was nevertheless an invitee because her use of the cul-de-sac as a means of access to her home was an activity which defendant permitted to be carried on upon the premises. Plaintiff also suggests that her use of the street could be said to benefit defendant economically since the presence of happy occupants might encourage others to buy homes in the new development.

■■ While plaintiff's arguments have considerable merit, we believe the case at bar is in a different category from those cases involving the use of business property for a purpose unrelated to the business of the owner. (*E.g., Trout v. Bank of Belleville; Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 124 N.E.2d 360.) Here we have a privately owned roadway which appeared to be open to public use for vehicular and pedestrian access to the dwellings located there, as well as access to other construction sites around the circle. We think logic and justice compel the recognition of a duty of due care on the part of the owner arising from the implied invitation to residents of the cul-de-sac and to the public to enter upon the private way. The Restatement (Second) of Torts §367 (1965) recognizes liability in such a situation, as follows:

"A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel."

The same rule is acknowledged in 62 Am. Jur. 2d *Premises Liability* §251 (1972), and has been followed in numerous States. *E.g., Ruby v. Casello* (1964), 204 Pa. Super. 9, 201 A.2d 219; *Aluminum Co. of America v. Walden* (1959), 230 Ark. 337, 322 S.W.2d 696; *Mercier v. Naugatuck Fuel Co.* (1953), 139 Conn. 521, 95 A.2d 263. *Cf., Bosiljevac v. Ready Mixed Concrete Co.* (1967), 182 Neb. 199, 153 N.W.2d 864; *Barlow v. Los Angeles County Flood Control Dist.* (1950), 96 Cal. App. 2d 979, 216 P.2d 903.

Applying the *Restatement* rule to the case before us, we conclude that defendant is subject to liability for physical harm suffered by plaintiff upon a finding that her injuries were attributable to defendant's failure to exercise reasonable care to maintain the cul-de-sac in a reasonably safe condition for pedestrian traffic. Under the circumstances of this case, plaintiff was not a licensee, and defendant's contention that she was a licensee must be rejected.

Next, defendant argues that, even if it did have a duty to use reasonable care, the evidence was insufficient to support a finding that defendant was negligent, since the evidence established that the slippery muddy condition which caused plaintiff to fall was the result of a thunderstorm. Defendant insists that liability cannot be imposed for injuries resulting from the natural accumulation of mud and rain water puddles, particularly since that condition had been in place an insufficient time for defendant to have actual or constructive notice. In a case relied upon by defendant, where a department store customer allegedly fell upon a patch of ice in the parking lot, the court stated:

> "Generally no liability is incurred for injuries resulting from a fall on snow or ice which has accumulated as a consequence of natural causes where the accumulation or condition is not aggravated by the owner. * * *
>
> Liability may be incurred, however, when snow or ice is not produced or accumulated from natural causes, but as a result of artificial causes or in an unnatural way, or by defendant's own use of the area concerned and creation of the condition, and where the condition has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition." *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 1068-69, 307 N.E.2d 449, 452.

■■ Considering the evidence of use by defendant's trucks in the case at bar, defendant could be held liable for plaintiff's injuries if the muddy slippery condition of the street were found to have been aggravated or created by defendant's own use of the area. Therefore, a question of fact was presented which the court quite properly submitted to the jury.

■■ Another error urged by defendant is the jury's special finding that plaintiff was not guilty of contributory negligence. Defendant discusses the evidence at length in an attempt to show that plaintiff was contributorily negligent as a matter of law and that the motion for a directed verdict in favor of defendant should have been granted. The standard to be applied is set out in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, where the supreme court held that a verdict should be directed only if the evidence, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors defendant that a verdict for plaintiff could never stand. Such is not the case here. Plaintiff testified that she had crossed the circle approximately 12 times in the days before the accident, that she could see the puddles by the porch lights and lightning, that she was proceeding with care around the puddles, and that she had no other means of access to her home. Under the circumstances, we hold that the question of contributory negligence was for the jury to determine.

Defendant also contends that prejudicial error occurred during closing arguments when the trial court overruled an objection to plaintiff's comment that defendant made a profit from the sale of homes to the Carrolls and the Burkharts when in fact there was no evidence as to profits. We think that plaintiff's comment was based on an inference fairly drawn from the evidence that defendant was the developer of a suburban subdivision and was engaged in the business of selling newly-built homes. Common experience would lead one to suppose that such homes were built and sold for profit. Hence the disputed comment was not reversible error.

Finally, defendant suggests that, under the *Pedrick* standard, the judgment should be reversed and judgment n.o.v. entered in favor of defendant, or in the alternative, the cause should be reversed and remanded for a new trial. As indicated above, we have reviewed the record and concluded that this case was properly submitted to the jury and that the evidence was sufficient to support the verdict and judgment in favor of plaintiff.

The judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.