JANICE SNELL, Special Adm'r of the Estate of Jacqueline Snell, Deceased, Plaintiff-Appellee, v. THE VILLAGE OF UNIVERSITY PARK, f/k/a The Village of Park Forest South, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2662

Opinion filed June 28, 1989.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Elizabeth A. Brown, Charles C. Hoppe, Jr., and Michelle A. Laiss, of counsel), for appellant.

Thomas P. Valenti, P.C., and Brian J. McManus & Associates, Ltd., both of Chicago (Thomas P. Valenti and Brian J. McManus, of counsel), for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Village of University Park (Village), appeals from the entry of a jury verdict of $900,000 in favor of plaintiff, Janice Snell,

special administrator of the estate of her deceased daughter, Jacqueline Snell (Jacqueline), in a wrongful death and survival action.[1] Defendant also appeals from the denial of its post-trial motion.[2] Plaintiff's action arose out of an incident which occurred on August 24, 1981, in which Jacqueline, 11 years old at the time, died after falling while riding her bicycle. Plaintiff alleged that the defective condition of a street curb caused Jacqueline to fall and sustain the injuries which caused her death. Specifically, plaintiff alleged that defendant was negligent in failing to inspect the curb; allowing the curb to remain, after receiving notice, in an unreasonably dangerous condition; and causing the curb to be sunken in certain areas.

Defendant raises the following contentions on appeal: (1) defendant was entitled to a directed verdict or a judgment notwithstanding the verdict, as a matter of law, since plaintiff failed to establish that defendant's negligence proximately caused Jacqueline's injuries; (2) the verdict is contrary to the manifest weight of the evidence; (3) the accumulation of certain errors at trial regarding the admission of evidence warrants reversal of the verdict; and (4) the verdict is grossly excessive.

For the reasons stated below, we reverse the judgment of the circuit court.

The record indicates that in the afternoon on August 24, 1981, while it was still light outside, Jacqueline and her friend, Lisa Boudreau, rode their bikes to the house of their neighbors, the Reillys, located at 822 Blackhawk in the village now known as University Park, Illinois. After visiting with Terry Reilly, the girls left. Lisa proceeded down the driveway first and rode into the street. Jacqueline followed, riding down the driveway, cutting across the sidewalk onto the grassy area between the sidewalk and street, when she fell.

Lisa Boudreau testified that as she reached the other side of Blackhawk Street, she turned her head and saw Jacqueline falling. Lisa was approximately 20 to 25 feet from Jacqueline. Lisa did not see Jacqueline from the time the two of them were standing in the driveway until she saw Jacqueline falling. Jacqueline did not fall over the handlebars, but rather fell to the side. Lisa saw Jacqueline as she was about to hit the ground. Jacqueline's head hit the ground, and then Jacqueline was lying on her back, with her head and most of her

---

[1] Judge Thomas J. Janczy, who subsequently retired, was presiding judge during the trial of this matter.

[2] Judge Edwin M. Berman presided at the hearing on the post-trial motion in this matter.

body on the street and with her legs on the grass. The bicycle was completely on the grass. Lisa approached Jacqueline, picked up her head, and noticed a bump on the back of her head.

Terry Reilly testified that he was standing in the driveway when the accident occurred. Terry saw Jacqueline ride down the driveway, through the grass, and toward the street. Terry stated that as Jacqueline went near the curb, it appeared that her bicycle "ran out of juice" and Jacqueline and the bicycle just seemed to fall. It did not appear that the bicycle struck any object or that the bicycle wobbled before Jacqueline fell. Jacqueline and the bicycle fell together. Terry stated that Jacqueline and the bicycle were close to the curb when she fell, but he could not say that they struck the curb. The bicycle was lying next to Jacqueline after she fell.

Michael Reilly testified that he was looking out of the front door of his house at 822 Blackhawk and saw the accident occur. Michael could clearly see the street, curb, and grass. When Jacqueline crossed the area between the sidewalk and street, she and the bicycle "just seemed to fall." It did not appear that she and the bicycle struck anything before she fell. Jacqueline did not fall over the handlebars but fell to the left side, and the bicycle fell with her. It did not appear that the bicycle jumped out or was thrown out in any way, or that Jacqueline lost control of the bicycle before she fell. Before she fell, the bicycle did not appear to wobble or turn in a different direction. It looked as though the bicycle slipped. Michael did not know the location of the front wheel of the bicycle immediately before Jacqueline fell. As far as he could remember, the bicycle was on the grass. After Jacqueline fell, the upper part of her body was in the street and part of her legs was on the grass area.

Brad Haag testified that he lived next to the Reilly house, at 824 Blackhawk, and observed the accident from his window as he was in the bathroom getting ready to shave. He looked out from the bathroom through his front picture window and was approximately 75 feet from where the accident occurred. Brad saw Jacqueline riding her bicycle down the driveway, across the sidewalk, and over the grass. She was between the sidewalk and the curb when she fell. Brad stated that the bicycle "flipped out" from under Jacqueline and it appeared that the grass may have been wet. There was nothing unusual about the bicycle, and it did not appear as if Jacqueline struck any object before she fell or that she lost control of the bicycle. The bicycle and Jacqueline fell to the side. Brad did not see the bicycle come into contact with the curb before Jacqueline fell. Part of Jacqueline's body was on the grass and part was on the street. The bicycle fell half on

the grass and half on the street.

Plaintiff testified that when she arrived at the scene, Jacqueline was lying on her back and was half in the street and half on the grass. Jacqueline was a careful bicycle rider and was in good health at the time of the accident. Plaintiff also testified regarding the family history. Jacqueline had an older sister and a younger brother. In addition, plaintiff described the relationships Jacqueline had with the family and Jacqueline's contributions to the family. Marshall Snell, the decedent's father and plaintiff's husband, also testified to the contributions Jacqueline provided to the family and her relationships with the family members.

Robert Coleman testified that he was the investigating police officer for the Village on the day of the accident. When he arrived at the scene, Jacqueline was lying on her back, partially in the street and partially on the grassy area. Her head and torso were on the pavement.

■ Initially on appeal, defendant contends that it was entitled to a directed verdict or a judgment notwithstanding the verdict, as a matter of law, since plaintiff failed to establish that the negligence of defendant proximately caused Jacqueline's injuries. In a negligence action, the plaintiff must establish a duty of reasonable care owed to him by the defendant, a breach of that duty, and an injury proximately resulting therefrom. (*Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 510 N.E.2d 1176.) Negligence may be shown by either direct or circumstantial evidence. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 457 N.E.2d 18.) Circumstantial evidence need not both create a reasonable inference of the fact to be shown and also exclude all other possible inferences. (*Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690, 697, 413 N.E.2d 106.) Liability, however, cannot be based upon surmise or speculation as to what might have happened to cause the plaintiff's injury. *Monaghan v. DiPaulo Construction Co.* (1986), 140 Ill. App. 3d 921, 923-24, 489 N.E.2d 409.

■ In order to establish the element of proximate cause, the plaintiff must bring evidence to demonstrate with reasonable certainty that a defendant's alleged conduct or omissions caused the plaintiff's injury. (*Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 338, 504 N.E.2d 243.) As a rule, it is within the province of the jury to determine whether the defendant's actions were the proximate cause of the plaintiff's damages. (*Illinois Bell Telephone Co.*, 90 Ill. App. 3d at 697.) The trial court, however, has the power to direct a verdict when all of the evidence, when viewed in its aspect most fa-

vorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) If the plaintiff fails to establish the element of proximate cause, he has not sustained his burden of making a *prima facie* case and a directed verdict is proper. See *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328.

■ In the instant case, plaintiff asserts that the circumstantial evidence, including the close proximity of the defective curb to the location of the accident, the way Jacqueline fell, and the position of the girl's body after the fall, supports a reasonable inference that the defective curb caused the decedent to fall and suffer the injuries that led to her death. Therefore, plaintiff contends, the jury verdict is properly supported by the evidence.

The record indicates, however, that none of the witnesses testified that the decedent or her bicycle came into contact with the curb. Plaintiff failed to present other direct evidence that Jacqueline struck the curb before she fell. Further, three of the witnesses stated that it did not appear that Jacqueline or the bicycle came into contact with the curb before they fell. We find that the evidence, therefore, fails to support the conclusion that the curb caused Jacqueline to fall. We hold that plaintiff failed to establish a *prima facie* case of negligence.

Case law cited by the parties supports this conclusion. In *McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 243 N.E.2d 657, the plaintiff's decedent fell down a stairway and subsequently died. The plaintiff presented evidence that the stairway was worn and that, in violation of a city ordinance, there was no railing on the right hand side of the stair. The appellate court reversed a jury verdict in favor of the plaintiff, stating that the evidence failed to indicate that the condition of the stairway or missing railing proximately caused the decedent's fall and consequent injuries and death. (*McInturff*, 102 Ill. App. 2d at 53.) Similarly, in the instant case, we cannot assume from the close proximity of the injured person to the defect that the defect was the cause of the fall.

In *Salinas v. Werton* (1987), 161 Ill. App. 3d 510, 515 N.E.2d 142, the court affirmed the granting of summary judgment in favor of the defendant. The defendant, a tow truck operator, was assisting a disabled automobile next to a highway when the plaintiff's decedent, who was standing at the side of the road, was struck by a van which left the highway. The court found that the record failed to support the plaintiff's asserted inference that the defendant's negligent failure to place flares or other warning devices on the roadside proximately

caused the decedent's injuries. The court stated that the circumstances must justify an inference of probability rather than mere possibility. The court held that submitting the question to the jury would have required the jury to determine liability based upon impermissible inferences. *Salinas*, 161 Ill. App. 3d at 514-15.

In the instant case, we find that the evidence fails to support an inference of probability, rather than possibility, that the defective curb caused Jacqueline to fall. Most significantly, the testimony of record disproves plaintiff's assertion that contact with the defective curb caused the fall. Michael Reilly, Terry Reilly, and Brad Haag testified that it did not appear that Jacqueline or the bicycle struck the curb before she fell. Michael Reilly added that it did not appear that Jacqueline or the bicycle struck any object or wobbled before they fell. Brad Haag stated that he did not see the bicycle come into contact with the curb before Jacqueline fell. In addition, none of the witnesses at trial affirmatively testified that Jacqueline or the bicycle came into contact with the curb prior to falling. In view of the testimony that Jacqueline and the bicycle did not come into contact with the curb before the fall, and the lack of other evidence to show contact with the curb before the fall, we must find that the circumstantial evidence regarding where and how Jacqueline fell, and the position of her body after the fall, is insufficient to establish proximate cause. See *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328.

The decision in *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157, cited by plaintiff, does not change this result, since *McKanna* is distinguishable from the case at bar. In *McKanna*, the court found circumstantial evidence sufficient to support a jury verdict that the defendant's negligent maintenance of a ladder proximately caused the plaintiff's death. The testimony of the plaintiff's co-worker indicated that the plaintiff was standing on the roof near a ladder hatchway at the defendant's plant after making repairs to an air conditioning system. The co-worker testified that he saw the plaintiff place his left hand on the hatchway cover and then turn around, apparently to prepare to descend the ladder. Through peripheral vision, the co-worker then saw the plaintiff fall to the boiler room floor. The court found that the testimony at trial regarding the plaintiff's actions, immediately prior to the incident, allowed a reasonable inference that the plaintiff intended to descend the ladder. The evidence also indicated that there were defects in the ladder and that the plaintiff was a safety-conscious worker and was careful on ladders. *McKanna*, 161 Ill. App. 3d at 527-28.

In the instant case, unlike *McKanna*, there were three witnesses

who actually observed the fall and who testified that it did not appear that the decedent came into contact with the allegedly defective object. This court therefore has found, unlike the court in *McKanna*, that a reasonable inference cannot be drawn that the curb caused the injuries.

Since we have found that plaintiff failed to establish a *prima facie* case of negligence for failure to bring sufficient evidence to show proximate cause, an essential element of negligence, defendant was entitled to a directed verdict. Accordingly, the jury verdict must be reversed and there is no cause to remand this matter to the trial court. In view of our holding on this issue, we need not address defendant's other arguments relating to alleged errors at trial and the excessiveness of the verdict.

For the foregoing reasons, the judgment of the circuit court is reversed without remandment.

Judgment reversed.

RIZZI and WHITE, JJ., concur.