JOHN JACOB, Plaintiff-Appellant, v. ERVIN GREVE *et al.*, Defendants (Mayflower Tours, Inc., Defendant-Appellee).

Second District No. 2—92—0845

Opinion filed October 13, 1993.

William R. Ketcham and Daniel E. Compton, both of Brittain & Ketcham, P.C., of Elgin, for appellant.

James T. Ferrini, Susan Condon, and Thomas H. Ryerson, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, and James P. Marsh, of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, John Jacob, appeals the order of the circuit court granting summary judgment in favor of defendant, Mayflower Tours, Inc. (Mayflower). Plaintiff raises two issues on appeal: whether the trial court erred in finding that Mayflower owed no duty to plaintiff, and whether there were questions of material fact regarding the proximate cause of plaintiff's injury. We will summarize only those facts relevant to Mayflower's motion for summary judgment.

Plaintiff sued Mayflower and Ervin Greve, Valley Bank & Trust Company (Valley Bank), and Royal American Charter Lines, Inc. (Royal American), for injuries he sustained when Greve hit plaintiff in the head with a carry-on bag on a tour bus owned by Royal American and chartered by Mayflower for a tour of Door County, Wisconsin. Valley Bank organized the tour for members of its Crown club, customers of Valley Bank who were at least 50 years old. Both plaintiff and Greve were members of the Crown club. Plaintiff alleged that Mayflower was a common carrier and owed a high degree of care to plaintiff. Plaintiff also alleged that Mayflower, through its agents Donald Herrick, the tour director, and Robert Hoeksema, the bus driver, was negligent in: failing to seek or provide assistance to senior passengers in unloading luggage; failing to evacuate seats over which luggage was being unloaded; failing to control or regulate the removal of carry-on baggage; failing to assist or control Greve in removing his baggage from an overhead compartment; failing to rotate all passengers to their original seats before removing baggage from the overhead compartments; instituting a system of passenger seat rotation which separated passengers from their overhead luggage; and failing to organize a safe and orderly method for passengers to depart the bus.

Plaintiff settled with Royal American, and the court granted summary judgment in favor of Valley Bank. Royal American and Valley Bank were no longer parties to this action when Mayflower moved for summary judgment.

Mayflower's motion for summary judgment first argued that Mayflower was not a common carrier. Mayflower asserted that Royal American was the carrier, and Royal American was a private, rather than a common, carrier. Mayflower next argued that Robert Hoeksema, the bus driver, was the agent of Royal American and was not an agent or employee of Mayflower. Mayflower also asserted that an exculpatory provision in its brochure relieved it of liability for plaintiff's injuries. Finally, Mayflower argued that it had no duty to

protect plaintiff from the type of injury he suffered and, even if there was a duty, the breach of that duty was not the proximate cause of plaintiff's injury.

The depositions of the bus driver, the tour director, Valley Bank's liaison, Greve, and plaintiff and his wife establish the following undisputed facts. Valley Bank decided to organize a tour of Door County, Wisconsin. It contacted Mayflower to handle the tour. Mayflower arranged for a bus and procured the hotel accommodations. Mayflower also provided a tour director as a guide on the trip. Valley Bank had a meeting with a representative from Mayflower for the members of the Crown club who were interested in going on the Door County trip. Plaintiff's wife attended the meeting, as did Greve, but plaintiff did not.

The tour director was in charge of the trip, and, if any of the passengers had any problems, they were to consult the tour director. The passengers were allowed one piece of luggage and a carry-on bag. The luggage was loaded underneath the bus and was handled by the bus driver and the tour director.

The tour director's main responsibilities were checking into and out of the hotels, ensuring that the luggage stored underneath the bus was delivered to each person's room and picked up at the room, and arranging for places to eat. On the bus, the tour director provided entertainment and general information about the tour, was available to answer questions, determined if any of the passengers had special needs and worked with the bus driver to expedite the trip. Generally, when passengers disembarked from the bus, the tour director was not on the bus. Instead he would be in the hotel checking on the rooms and getting the keys. The tour director had the duty to determine which luggage was stored under the bus and what would be carried on. There was no weight or size limitation on the carry-on bags.

Mayflower had a policy of seat rotations whereby, after each stop, the passengers were moved to a different seat to allow everyone the opportunity of having a good view out the window. The passengers were instructed not to move their carry-on luggage when they changed seats.

On the first day of the trip, the passengers changed seats three times. After the last change, plaintiff and his wife ended up in their original seats. When the bus reached the hotel, the tour director instructed the passengers on the right side of the bus to disembark first, row by row from the front. The tour director left the bus, and the passengers on the right side of the bus disembarked. Nearly all

the people on the right side of the bus had left, and the few people in the back on the right side told Greve and his wife to go ahead of them. Greve and his wife then went to get their carry-on bag. Greve's wife held the retaining wire up while Greve retrieved the bag from the overhead compartment. Greve had trouble getting the bag out, and he hit plaintiff in the head with the bag.

In his deposition, plaintiff stated that he noticed Greve was having trouble putting his carry-on bag in the overhead compartment when they boarded the bus. Plaintiff described the bag as a "Samsonite cosmetic bag." Plaintiff also stated that the disembarking from the bus at the hotel was "very orderly." No one offered assistance with the carry-on bags.

Donald Herrick, the tour director, stated in his deposition that he was not responsible for assisting the passengers with carry-on luggage. Any assistance he provided was on a "voluntary basis" when he saw someone who was short having trouble getting the bag up or if the rack was crowded. However, Herrick usually was not on the bus when passengers were loading or unloading the carry-on bags.

The bus driver, Robert Hoeksema, testified in his deposition that his employer, Royal American, instructed him to be available to assist passengers with carry-on bags when the Mayflower tour director requested that he do so. On the Door County trip, Herrick did not request Hoeksema to assist any of the passengers with the carry-on bags. During the deposition, Hoeksema was asked if he ever had "an experience in *** driving on these tours with an elderly passenger having a problem putting anything in or taking anything out" of the overhead compartments. Hoeksema answered that he had, but he could not recall when. He stated:

> "[W]hen you put something in [the compartment], it kind of goes down. So sometimes if the person is short, they [sic] can't see. So then I would go over there and look, because I'm taller, I can look over the top of it.
>
> If you're a short person or if they're [sic] an older person, yeah, I would—just to help them [sic], to be helpful."

Hoeksema also stated that the majority of people who go on tours are senior citizens and most of Mayflower's trips were senior citizen trips.

Mayflower's president submitted an affidavit in which he averred that, in the 13 years that Mayflower operated tours, there was never an incident in which a passenger removed a piece of luggage from an overhead rack in such a way as to strike another passenger with it. Mayflower's president also stated that Mayflower did not employ Hoeksema and it did not direct the bus driver in any of his duties.

Ervin Greve stated in his deposition that, before the trip, the Mayflower representative advised the prospective passengers that they could bring a "small" carry-on bag in addition to the large luggage. The Mayflower representative also instructed the group that if they had any problems with either the large luggage or the carry-on bags, they should tell the tour director. In addition, when Greve was boarding the bus, Herrick advised him to inform Herrick if Greve had any problems.

Mayflower attached to its motion a copy of its general brochure which it distributed to the Crown club members before the trip. The brochure stated:

"In addition to the small carry-on piece just mentioned, each Tour Member may bring one large piece of luggage, for which the tugging, lugging—why do you think they call it lug-gage?—and carrying will be our responsibility. Simply attach the included Mayflower Tours luggage tag to the large piece before leaving home and we will see to it that your baggage arrives where and when you do."

The brochure also represented that the tour director would "supervise the handling of luggage." The brochure further stated that Mayflower was "not able to accept responsibility for any losses or damages to personal property or for injuries, expenses or damages incurred by any Tour Member." A specific flier for the Door County trip provided, under "Luggage Suggestions," that "One large piece of luggage per person is permitted. In addition, you are allowed one carry-on bag aboard the motorcoach."

The trial court determined that Mayflower was not entitled to summary judgment on the basis of the exculpatory clause because there were genuine issues of material fact about whether the exculpatory clause was part of the agreement between plaintiff and Mayflower. However, the court found that the facts did not support plaintiff's claim that Mayflower was a common carrier. Even assuming that plaintiff alleged that Mayflower had a duty of ordinary care, the court concluded Mayflower was entitled to judgment as a matter of law because Mayflower had no duty to protect plaintiff from the occurrence alleged. The court found that there were no evidentiary facts which showed that plaintiff relied on Mayflower to protect him, nor were there any facts to support plaintiff's claim that the driver of the bus was Mayflower's agent.

Plaintiff moved to reconsider the order of summary judgment, and he requested leave to amend the complaint to allege that Mayflower had a duty of ordinary care. The court allowed the motion to

amend the complaint because the reasons for the entry of summary judgment assumed that Mayflower had a duty of ordinary care. The court denied the motion to reconsider and clarified its previous order as follows:

> "[T]here are no evidentiary facts presented indicating that Defendant Mayflower Tours, Inc. voluntarily undertook a duty to assist or supervise passengers in connection with placement and/or removal of carry-on luggage and then failed to exercise due care in that undertaking. Nor are there evidentiary facts indicating that Mayflower undertook performance in that regard gratuitously and in such manner that passengers, including Plaintiff, reasonably relied on Mayflower to protect them from harm under these circumstances."

Plaintiff timely appealed.

We review the entry of summary judgment *de novo*. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) Summary judgment is proper if the pleadings, depositions, or other documents on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Outboard Marine*, 154 Ill. 2d at 131.) The trial court must construe all these documents strictly against the movant and liberally in favor of the opponent of the motion. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11.) The court must deny the motion for summary judgment if there is a dispute as to material facts or if reasonable persons could draw different inferences from the undisputed facts. (*Hoover*, 155 Ill. 2d at 411.) A plaintiff resisting summary judgment need not prove his case at this stage, but he must present some factual basis that would arguably entitle him to judgment. *Knief v. Sotos* (1989), 181 Ill. App. 3d 959, 963.

In a negligence action, the plaintiff must set out sufficient facts to show the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury which was proximately caused by the breach. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411.) The court here ruled that Mayflower was entitled to judgment as a matter of law because it did not have a duty to prevent plaintiff's injury. The existence of a duty on a defendant is a question of law which may be determined on a motion for summary judgment. *Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 207.

Mayflower asserts that the alleged negligence here was nonfeasance, as opposed to misfeasance. "Liability arises from misfeasance [citation], but not from nonfeasance [citation]." (*Lewis v. Razzberries, Inc.* (1991), 222 Ill. App. 3d 843, 851.) If a person is under no

duty to act, the failure to do so may be negligent conduct, but will not subject that person to liability because of the absence of a duty. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 556.) To impose a duty, there must be a relationship between the plaintiff and the defendant such as to give rise to a duty to protect the plaintiff from an unreasonable risk. (*Fancil*, 60 Ill. 2d at 555-56.) According to plaintiff, he was a business invitee of Mayflower, and, therefore, Mayflower owed him a duty of reasonable care. However, plaintiff fails to specify the parameters of this duty, although at one point in his brief he asserts that Mayflower had an "obligation to supervise luggage." The other possible aspect of this duty of reasonable care, as alleged by plaintiff, is a duty to assist passengers with the carry-on luggage. We will assume that these are the duties plaintiff seeks to impose on Mayflower.

■ Plaintiff appears to base these duties on the contract between himself and Mayflower, as embodied in the brochure and the representations of Mayflower's employees. Mayflower agreed to provide transportation, arrange for meals, provide entertainment on the bus, and make sure that the group checked into and out of the hotel efficiently. Plaintiff failed to present evidence that Mayflower agreed to assist with the carry-on bags or to supervise the loading and unloading of the carry-ons. Nothing in Mayflower's promotional material suggests that it would assist with carry-ons. As shown by the brochure, Mayflower voluntarily assumed a duty to handle only the large luggage which was stored under the bus. Mayflower permitted the members of the group to bring a carry-on if they wished. Mayflower made no representations about the carry-ons. We conclude that plaintiff failed to present any facts to show that Mayflower had a duty, pursuant to the contract, to assist with or supervise the loading and unloading of the carry-on luggage.

Even though Mayflower did not have a contractual duty to act, if it voluntarily assumed the duty, its nonfeasance may give rise to liability if plaintiff relied on Mayflower to act. (*Mattice v. Goodman* (1988), 173 Ill. App. 3d 236, 240.) The trial court determined that plaintiff failed to present evidentiary facts which would establish that plaintiff relied on Mayflower to assist with or supervise the handling of carry-on luggage. According to plaintiff's deposition, he saw that Greve had difficulty putting the carry-on bag in the overhead compartment. Plaintiff did not ask the tour director to offer assistance to Greve before Greve unloaded the bag. The tour director, Herrick, stated in his deposition that, if he helped someone with a carry-on, it was done voluntarily, but usually he was not on the bus when the passengers disembarked. The bus driver stated that he was not asked by Herrick to

assist anyone with the bags on the Door County trip. As plaintiff stated in his deposition, no one offered to help with the carry-ons. In addition, there was no evidence that Greve requested any assistance with his carry-on bag. We conclude that plaintiff failed to present any facts to show that Mayflower voluntarily undertook a duty to assist with or supervise the placing or removing of the carry-on baggage.

Finally, we determine that plaintiff failed to show that a duty should be imposed on Mayflower as a matter of public policy. Plaintiff argues that it was foreseeable that a passenger would have difficulty getting a carry-on down from the overhead compartment and might hit another passenger with it. While we agree with plaintiff that such a scenario was foreseeable, foreseeability is not the only consideration when determining whether to impose a duty. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 72.) The other relevant factors for imposing a duty are the likelihood of injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant. *Curatola*, 154 Ill. 2d at 214.

Even if it was foreseeable that one passenger might hit another in the head with a small carry-on bag, plaintiff failed to present any evidence that it is likely that the person hit would be injured. Mayflower's president's affidavit showed that the likelihood of injury is small, as the company had received no reports of such injuries in 13 years. Assuming *arguendo* that the bus driver's knowledge is imputable to Mayflower, his deposition testimony also failed to establish the likelihood of injury. Hoeksema merely stated that he had seen people having trouble with the overhead compartments, but he did not indicate that anyone had ever been injured. Thus, plaintiff failed to establish this second factor.

Moreover, it would be unduly onerous to require Mayflower to supervise and assist all "elderly" travelers with carry-on bags. Mayflower would be required to determine how old is "elderly," without regard to the physical capabilities of the individual. Boarding and disembarking would become a lengthy process, as everyone would have to go on the bus, one at a time, to store or retrieve a bag, or they would have to wait while the tour director or the bus driver loaded and unloaded the luggage under the bus and then the carry-ons on the bus.

Plaintiff failed to show that Mayflower's failure to supervise or assist with carry-on luggage was unreasonable. Plaintiff does not argue that a tour company has a duty to assist every passenger with carry-on baggage. There was no evidence that Greve was physically disabled or infirm, or even that he was "short." We decline plaintiff's

invitation to impose a duty to prevent people from handling their own luggage merely because they happen to have reached a certain age. Plaintiff assumes that all persons over 50 are incapable of safely handling carry-on bags and pose an unreasonable risk of harm to themselves or others. We reject this assumption. As the trial court found, it was not unreasonable for Mayflower not to help everyone with the carry-ons. Thus, plaintiff failed to present facts to establish that Mayflower had a duty to supervise or assist with the removal of carry-on baggage.

Plaintiff next contends that a genuine issue of material fact exists regarding the issue of proximate cause. The trial court did not rule on this issue. Therefore, we decline to address plaintiff's second contention. We conclude that the trial court did not err in entering summary judgment for defendant.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD and BOWMAN, JJ., concur.