MORGAN J. ORDMAN, Indiv. and as Adm'r of the Estate of Maurice Ordman, Deceased, Plaintiff-Appellant, v. DACON MANAGEMENT CORPORATION *et al.*, Defendants-Appellees.

Third District    No. 3—93—0534

———

Opinion filed May 3, 1994.—Rehearing denied June 8, 1994.

276

BRESLIN, J., dissenting.

Bernard R. Nevoral, of Bernard R. Nevoral & Associates, Ltd., and Mc-Bride, Baker & Coles, both of Chicago (Geoffrey G. Gilbert, of counsel), for appellant.

Michael Resis, of Querrey & Harrow, Ltd., of Chicago (James W. Fessler, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

The plaintiff, Morgan J. Ordman filed a negligence action for personal injuries to and the wrongful death of plaintiff's decedent, Maurice Ordman, against the defendants, Dacon Management Corporation and Dacon Bolingbrook Limited Partnership, d/b/a Brentwood Apartments. The circuit court of Will County granted the defendants' motion for summary judgment and plaintiff appeals.

## I. FACTS

The complaint alleged that on February 2, 1991, the plaintiff's decedent resided at the Brentwood Apartments at 302 Woodcreek Road in Bolingbrook, Illinois, and that the defendants owned the apartment complex. The complaint further alleged that the plaintiff's decedent had parked his car in the garage at the apartment complex and had started to leave his garage and walk back toward the entranceway of the complex when he slipped on an accumulation of ice

and snow and fell to the ground. The ice and snow were allegedly immediately adjacent to the decedent's garage door.

Count I of the complaint, brought pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, par. 1 *et seq.*), alleged the following negligent acts or omissions:

"(a) carelessly and negligently placed and permitted mounds of snow and ice adjacent to the doors of the garages at the complex;

(b) carelessly and negligently failed to maintain the premises in a reasonable safe condition;

(c) carelessly and negligently failed to remove ice and snow from the pavement of the parking lot even after it had accumulated to such an extent as to form a dangerous condition;

(d) carelessly and negligently failed to maintain an adequate maintenance program to ensure that the premises were reasonably free of unnatural conditions of ice and snow accumulations;

(e) carelessly and negligently failed to place gutters and downspouts on the garages of the complex; and

(f) carelessly and negligently failed to warn the plaintiff of the hazardous nature of the premises."

Count I of the complaint further alleged that the defendants owed to the plaintiff's decedent the duty to exercise ordinary care to maintain the premises in a reasonably safe condition, and that the defendants' breach of that duty was the direct and proximate cause of plaintiff's decedent's fall resulting in the injuries causing his death. Count II of the complaint, brought under Illinois' Survival Act (Ill. Rev. Stat. 1991, ch. 110$^1$/2, par. 27—6), alleged the same negligent acts as alleged in count I. Count II further alleged that during the 35 days following the accident, the plaintiff's decedent experienced great pain and suffering, underwent extensive medical care and suffered significant personal and pecuniary injuries prior to his death.

The defendants filed a motion for summary judgment arguing that they owed no duty to the plaintiff's decedent (Mr. Ordman), contending that the accumulation of ice was not "unnatural" and alleging that they had no notice of the accumulation. In response to the defendants' motion for summary judgment, plaintiff alleged that the defendant had assumed a duty toward Mr. Ordman by undertaking to remove snow and ice from the Brentwood Apartments by contracting with the Kenneth Company to do so. The plaintiff further argued that the defendants were under a duty to provide Mr. Ordman a reasonably safe means of ingress and egress, which they breached by allowing an unnatural accumulation of ice in front of Mr. Ordman's garage and failing to warn Mr. Ordman of the ice.

The plaintiff attached excerpts from the discovery deposition of Coy Hatch, the maintenance superintendent at Brentwood Apart-

ments. Mr. Hatch testified that it was the custom and practice of the Dacon Management maintenance staff to shovel and spread salt any place it would be hazardous to anyone. Mr. Hatch also testified that the snow-plowing company would plow the parking lot in front of the garages, leaving a strip of snow approximately one foot wide along the front of the garage. He testified that Dacon Management would usually then remove the snow in front of the garage to the side of the garage or the middle of the parking lot in order to get the cars in and out of the garage. According to the National Climatic Data Center's Local Climatological Data Monthly Summaries for January and February of 1991, there had been only traces of snow or ice on the ground between January 19, 1991, and the accident on February 2, 1991.

Willie Anderson was in the parking lot at the time of the accident. According to the excerpts from Mr. Anderson's deposition, he was in the parking lot working on his car when he heard an "uh" sound and heard Mr. Ordman's body hit the ground. Mr. Anderson turned around and saw Mr. Ordman lying on his back in front of the garage. Mr. Anderson testified that when the parking lot was plowed, snow was left in certain areas, including the area in front of the garage doors. Mr. Anderson stated that he noticed water dripping from the garage roof as a result of snow melting on the roof, and that this water resulted in the ice that allegedly caused Mr. Ordman to fall.

The excerpts from the deposition of Deola Anderson reveal that she saw Mr. Ordman lying flat on his back 5 to 10 feet in front of his garage on top of a patch of ice which was about 10 feet wide. She testified that she could not see the ice at first because it was clear and that she slipped and fell on the ice as she approached Mr. Ordman, as did the paramedics.

## II. ANALYSIS

The issue presented in this appeal is whether the trial court erred by finding that the defendants owed no duty to plaintiff's decedent and granting the defendants' motion for summary judgement. On appeal, we review the summary judgement *de novo* to decide whether the trial court properly determined that there were no material questions of fact and that judgement for the movant was correct as a matter of law. (*Jacob v. Greve* (1993), 251 Ill. App. 3d 529, 534, 622 N.E.2d 81, 84.) The question of whether a duty exists is a question of law, and where no duty exists, summary judgement is proper because there is no possible recovery for plaintiff as a matter of law. (*Watson v. J.C. Penney Co.* (1992), 237 Ill. App. 3d 976, 981, 605 N.E.2d 723, 726.) However, "[s]ummary judgement is a drastic means of disposing of litigation" and "the evidence is to be construed

strictly against the movant and liberally in favor of the opponent." (*Graf v. St. Luke's Evangelical Lutheran Church* (1993), 253 Ill. App. 3d 588, 591, 625 N.E.2d 851, 854.) We find that the plaintiff has alleged facts sufficient to establish a duty owed by the defendants to the plaintiff's decedent.

One is generally not liable for injuries caused by natural accumulations of ice or snow, and there is no duty to remove natural accumulations of ice or snow. (*Graham v. City of Chicago* (1931), 346 Ill. 638, 641, 178 N.E. 911, 912.) However, a duty may arise on the part of the defendant-premises owner, if the defendant voluntarily undertook the task of removing natural accumulations of ice or snow and did so negligently or if the defendant was responsible for an unnatural accumulation of ice or snow. Liability will be imposed on a defendant where the plaintiff shows an injury that was caused by such an unnatural accumulation of ice or snow. *Graf*, 253 Ill. App. 3d at 591, 625 N.E.2d at 854.

### A. Voluntary Undertaking

In situations in which a duty would not otherwise arise, a duty to act reasonably may be imposed when a defendant negligently performs a voluntary undertaking. *(Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 210, 399 N.E.2d 596, 599; *Eichler v. Plitt Theatres, Inc.* (1988), 167 Ill. App. 3d 685, 691, 521 N.E.2d 1196, 1201.) Section 323 of the Restatement (Second) of Torts states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other person's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other person's reliance upon the undertaking." (Restatement (Second) of Torts § 323, at 135 (1965).)

The extent of the duty imposed on one who voluntarily undertakes to perform an act is limited to the extent of the undertaking. *Pippin*, 78 Ill. 2d at 210, 399 N.E.2d at 599.

■ We believe that the defendants in the present case voluntarily undertook the task of removing all snow from the parking lot and were under a duty to perform that task with reasonable care. (See *Sims v. Block* (1968), 94 Ill. App. 2d 215, 236 N.E.2d 572 (affirming verdict for tenant when tenant slipped and fell on ridge of ice created from defendant plowing its parking lot); *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534 (affirming verdict for

plaintiff who slipped on patch of ice created by thawing and freezing of snow which was piled at end of parking lot by snow plow).) As previously mentioned, the record indicates that the defendants contracted with the Kenneth Company to "[r]emove all snow on drive areas including fire lanes, streets and stalls." Further, the defendants' own employee, Wayne Hatch, testified that the defendants' maintenance staff would shovel snow and spread salt "anyplace that it snowed in the sidewalk areas *** [a]nyplace that would be hazardous to anybody." The maintenance staff would also spread salt on ice "[a]nywhere on the property."

Mr. Hatch also testified that the contractors would plow to within about a foot of the garage and leave the snow remaining within a foot in front of the garage and that the defendants' maintenance staff would generally shovel that snow to the side of the garage or use a snow blower to blow it out toward the middle of the parking lot. According to Willie Anderson, ice patches were left in front of the garage doors because patches of snow were left from the plows in the parking lot which then melted and refroze.

Plaintiff has pled facts indicating that the defendants undertook to remove the snow and ice from the parking lot, yet left piles of snow from the plowing in front of the garage area, an area over which Mr. Ordman was required to tread in order to get to his apartment. We believe that the defendants should have recognized that proper removal of the snow from the area in question was necessary to protect Mr. Ordman from physical harm. (See Restatement (Second) of Torts § 323, at 135 (1965).) Accordingly, we find that the defendants were under a duty to use reasonable care in clearing the area and that the plaintiff pled facts from which a trier of fact could conclude that the defendants breached that duty.

We acknowledge that the gratuitous performance of removing snow and spreading salt does not alone create a continuing duty to perform those tasks. (*Burke v. City of Chicago* (1987), 160 Ill. App. 3d 953, 957, 513 N.E.2d 984, 987.) In *Burke* the plaintiff slipped and fell at Midway Airport in Chicago on a day during which more than two inches of snow fell. Pursuant to its lease with Northwest Airlines, the defendant had assumed the duty to remove snow "as reasonably may be done." (*Burke*, 160 Ill. App. 3d at 957, 513 N.E.2d at 987.) The area in which the plaintiff fell had been plowed earlier that day and additional snow had fallen. The *Burke* court found that because no facts indicated that the defendant negligently plowed the area or that there was an unnatural accumulation of snow or ice, summary judgement for the defendants was proper.

The present case is distinguishable from *Burke* in several aspects.

First, we do not believe that snow removal was a gratuitous undertaking, as it is reasonable to assume that the tenants of the Brentwood Apartments paid for snow removal as an expense included in their rent payments. The defendants contracted with the Kenneth Company for "[r]emoval of all snow on drive areas." Further, in *Burke* the snow continually fell the day of the accident after the defendant had plowed. It is unreasonable to require a defendant to ensure that an area is clear of all snow and ice under the circumstances in *Burke*. In the present case, the defendants' snow removal contractor had last been on the property to spread salt 12 days before Mr. Ordman's fall and little or no snow had fallen in the days before the accident. Finally, as previously discussed, the plaintiff has alleged facts in the case at hand which may establish that the defendants were negligent in removing the snow from the parking lot, and as is discussed next, the plaintiff has alleged that the ice patch on which Mr. Ordman fell was an unnatural accumulation of ice. Thus, *Burke* is inapplicable to the case at hand.

## B. Natural/Unnatural Accumulation

We first note that the general rule is that one is not liable for injuries caused by natural accumulations of ice or snow. This rule is due to the fact that it is unrealistic to expect property owners to keep all areas where people may walk clear from ice and snow at all times during the winter months. (*Graham*, 346 Ill. at 643, 178 N.E. at 913.) However, when a defendant causes an unnatural accumulation of ice or snow by the defendant's use or maintenance of the area, and the accumulation exists on the premises long enough to charge the defendant with knowledge, the defendant is under a duty to make the premises reasonably safe. (*Graham*, 346 Ill. at 643-44, 178 N.E. at 913; *Sims*, 94 Ill. App. 2d at 222, 236 N.E.2d at 575.) Plaintiff must allege some facts to show that the accumulation of ice was unnatural or caused by the defendant. *Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 1018, 525 N.E.2d 1127, 1129.

The plaintiff has alleged facts from which a jury could conclude that water dripped from the melting snow on the roof of Mr. Ordman's Garage onto the ground and refroze in front of the garage door. The plaintiff also alleged facts from which a jury could conclude that when the parking lot was plowed the plows left behind patches of snow in the lot, including the area in front of Mr. Ordman's garage, and that these areas of snow would melt and refreeze.

We believe that there were sufficient facts pled to raise a question to be presented to the jury as to whether the ice on which Mr. Ordman allegedly slipped was an unnatural accumulation. In *Lapidus v.*

*Hahn* (1983), 115 Ill. App. 3d 795, 450 N.E.2d 824, water dripped from a roof onto plaintiff's porch, where it collected in a depression on the porch and froze. Plaintiff slipped and fell sustaining injuries to her left arm. The appellate court affirmed the jury verdict for the plaintiff finding that the jury could reasonably have concluded that the accumulation of ice "was caused by the defective nature and construction of the roof and abetted by the depression in the platform and thus was not a natural accumulation." (*Lapidus*, 115 Ill. App. 3d at 801, 450 N.E.2d at 828.) *Lapidus* is applicable to the case at hand. Although there was no allegation of a depression in the parking lot which trapped the water, there were sufficient facts alleged for a jury to conclude that the ice was an unnatural accumulation.

In sum, when a landowner maintains a building or structure in a manner which causes water runoff in an area over which the landowner should know people will walk, and the water freezes for a period of time sufficient to give the landowner notice of the dangerous condition, it is not unreasonable to hold the landowner liable for injuries caused by such unnatural accumulations of ice. See *Graham*, 346 Ill. 638, 178 N.E. 911.

In *Sims*, the plaintiff-tenant slipped and fell on a ridge of ice in a parking lot after the landlord had cleared the lot. In that case, the appellate court stated that "it is a fair inference from the record that the spillover of the snow as the plow skirted the parked car would have increased the depth of the snow at that location." (*Sims*, 94 Ill. App. 2d at 219, 236 N.E.2d at 574.) The court also noted that the parking lot had last been plowed 10 days before the plaintiff's fall. The court then affirmed the jury verdict for the plaintiff stating that "[u]nder these circumstances the question of defendants' negligence in creating an unnatural condition was properly one of fact for the jury to decide." *Sims*, 94 Ill. App. 2d at 223, 236 N.E.2d at 576. See also *Graf*, 253 Ill. App. 3d 588, 625 N.E.2d 851 (reversing summary judgement for defendant where defendant's agents created an unnatural accumulation of snow by partially clearing one side of steps and piling snow on other half); *Carroll v. Lily Cache Builders, Inc.* (1979), 74 Ill. App. 3d 264, 392 N.E.2d 986 (finding that question of whether condition was unnatural was properly submitted to the jury where defendant's trucks caused ruts in surface of unfinished cul-de-sac); *Fitzsimons*, 29 Ill. App. 2d 306, 173 N.E.2d 534 (affirming verdict for plaintiff that slipped on patch of ice created by thawing and freezing of snow which was piled at end of parking lot by snow plow).

It is also important that there had been only traces of snow or ice on the ground during the 14 days preceding Mr. Ordman's fall. This fact supports the plaintiff's contention that the ice was an unnatural

accumulation because there had been little or no precipitation to create a "natural" accumulation in two weeks. We find that plaintiff alleged sufficient facts from which a jury could conclude that the defendants had notice of the dangerous condition. Fourteen days had past since the last significant snowfall, and according to the depositions of Willie and Deola Anderson, water dripped off the roof "a lot of times" and the ice patch was a "big thick piece of ice."

In sum, we find that the plaintiff has alleged sufficient facts to establish a duty owed by the defendants to Mr. Ordman. First, the defendants undertook to remove the snow from the tenants' parking lot and, as a result, were under a duty to do so with ordinary care. Further, the plaintiff alleged facts from which a jury could conclude that the ice patch on which Mr. Ordman allegedly slipped was caused by either the defendants' snow removal activities, water dripping from the roof of the garage or a combination of the two. Consequently, plaintiff properly alleged that the defendants were under a duty to remove such an unnatural accumulation of ice. We hold that the trial court erroneously granted the defendants' motion for summary judgement because the plaintiff properly alleged a duty owed by the defendants and questions of material fact remained for a jury to decide. Because we find that the defendants owed a duty to Mr. Ordman, we need not discuss plaintiff's additional theories for establishing a duty.

### C. Proximate Cause

The defendants contend that we should affirm the summary judgement because there were no eyewitnesses who actually saw Mr. Ordman fall, and due to Mr. Ordman's injuries and subsequent death, he could not testify as to what caused him to fall. The defendants' position is that, therefore, it is impossible for plaintiff to prove that the patch of ice proximately caused Mr. Ordman's fall. Proximate cause is a question of fact for the jury and becomes a question of law only when all material facts are undisputed and reasonable jurors could not differ as to the inferences to be drawn form them. (*Bickerman v. Wosik* (1993), 245 Ill. App. 3d 436, 614 N.E.2d 551.) We first note that the defendants failed to raise this issue at the circuit court and, thus, this issue has not been fully litigated below.

The defendants cite several cases in which Illinois courts have found insufficient facts to support the plaintiff's contention that the alleged defect proximately caused the injury. However, these cases are distinguishable from the case at bar. In *Kellman v. Twin Orchard Country Club* (1990), 202 Ill. App. 3d 968, 560 N.E.2d 888, a witness testified that the decedent, who had fallen in a locker room

shower stall, had been unsteady on his feet and required assistance to reach the shower. There is no such testimony in the present case as to an alternative cause of Mr. Ordman's fall making the defect on the premises an unlikely cause. In *Snell v. Village of University Park* (1989), 185 Ill. App. 3d 973, 542 N.E.2d 49, the plaintiff's decedent died after falling from her bicycle, and plaintiff alleged that she fell due to the defective condition of a street curb. However, three witnesses stated that it did not appear that the decedent or her bicycle came into contact with the curb before she fell. There is no such testimony disclaiming the probability that Mr. Ordman slipped on the ice patch in the present case.

■ The plaintiff in *Brett v. F.W. Woolworth Co.* (1972), 8 Ill. App. 3d 334, 290 N.E.2d 712, claimed that she tripped and fell due to a depression created by the adjoining edges of two rugs. The *Brett* court noted that the only evidence of the depression was the testimony of an investigator who inspected the rug two weeks after the incident and found that "[n]o evidence was introduced showing that a depression existed at the time." (8 Ill. App. 3d at 336.) The plaintiff stated that she did not know what there was about the rug that caused the fall. In the case at bar, testimony clearly establishes that the ice patch existed at the time of Mr. Ordman's fall and that Mr. Ordman was lying on top of that ice when he landed. There is also testimony that persons coming to the aid of Mr. Ordman slipped on the same patch of ice. We also believe that a jury would find a large clear patch of ice more likely to cause someone to fall than the edges of two adjoining rugs.

In this court's recent decision in *Bickerman*, we affirmed the summary judgement order granted to the defendants. In *Bickerman* the plaintiff fell down a stairway on the defendants' property but could not remember what caused the fall and there were no eyewitnesses. The plaintiff alleged that the defendants were negligent in violating certain building codes. This court found that "[t]here was no evidence in this case to indicate that a building code violation caused the decedent's injuries." (*Bickerman*, 245 Ill. App. 3d at 439, 614 N.E.2d at 553.) We believe that the facts alleged in the present case more strongly link the dangerous condition to Mr. Ordman's injuries than in the cases cited by the defendants. We believe the facts presented in this case are more akin to the facts in *Wright v. Stech* (1972), 7 Ill. App. 3d 1068, 288 N.E.2d 648, in which the appellate court reversed a directed verdict for the defendant. The *Wright* court found a question of fact for the jury as to whether the defendant's negligence caused plaintiff's injuries and death where plaintiff fell down a dark stairway that was littered with debris. As

in the present case, there were no eyewitnesses to the fall, and the court stated that "it is not essential that causation be shown by direct evidence; it may be shown by facts and circumstances which, in light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury." *Wright*, 7 Ill. App. 3d at 1070, 288 N.E.2d at 650.

## III. Conclusion

In conclusion, we find that where the plaintiff alleges that a witness hears the decedent fall, seconds later the witness sees the decedent lying on a large patch of ice and persons approaching the decedent slip and fall on the same patch of ice, there is a question of fact to submit to a jury as to whether the ice caused the decedent to fall. Since we find that defendants owed a duty to plaintiff's decedent and plaintiff alleged facts sufficient to raise questions for a jury regarding the breach of that duty and proximate cause, summary judgment was improper.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LYTTON, J., concurs.

JUSTICE BRESLIN, dissenting:

The plaintiff has not produced enough evidence of proximate cause to survive a motion for summary judgment in this matter. The only evidence regarding causation is the testimony of Willie Anderson that he heard an "uh" sound and then heard the decedent's body hit the ground and the testimony of Deola Anderson that the decedent's body was found lying on a patch of ice.

In *Roberts v. Allstate Life Insurance Co.* (1993), 243 Ill. App. 3d 658, 612 N.E.2d 103, Roberts, a railroad employee, fell from a train and sustained injuries which resulted in his death. While working on the train with Roberts, a co-employee heard a "thud." Upon investigating, he found Roberts lying on the ground near the train. The plaintiff argued that since an autopsy had ruled out heart attack or stroke, the only explanation for Roberts' fall was that he had been struck by the train.

The *Roberts* court held that no theory of causation can be established by circumstantial evidence unless the facts relied upon are of such a nature and so related to each other that it is the only

conclusion that can reasonably be drawn from them. It found that there was a complete absence of probative facts to support the plaintiff's theory of the case and thus summary judgment was correctly granted to the defendant.

The case at bar encompasses almost exactly the facts in *Roberts*. In each case, the only witness merely heard a sound; no one actually witnessed the fall. The bodies of both decedents were found lying near the object believed to have caused the fall. However, in *Roberts*, the plaintiff was able to rule out heart attack and stroke as possible causes. The plaintiff at bar has not produced any such evidence. Just as the plaintiff in *Roberts* failed to show that the only probable cause of Roberts' fall was his being struck by the train, so too, the plaintiff in the case at bar has failed to prove that the only probable cause of the decedent's fall was the ice upon which his body was found.

By relying on a lack of evidence to disprove causation instead of the production of positive evidence to establish it, the majority has shifted the burden of proof from the plaintiff to the defendants. Such a shift is contrary to our entire adversarial system of justice. Therefore, I cannot agree with the majority on the issue of proximate cause and respectfully dissent.