JULIE FICHTEL et al., Plaintiffs, v. THE BOARD OF DIRECTORS OF THE RIVER SHORE OF NAPERVILLE CONDOMINIUM ASSOCIATION et al., Defendants (Patricia Gatto et al., Plaintiffs-Appellants; State Farm Fire and Casualty Company, Defendant-Appellee).

Second District    No. 2—07—1237

Opinion filed April 21, 2009.

Juliet E. Boyd, Scott W. Kummer, and Alissa A. Rubin, all of Boyd & Kummer, LLC, of Chicago, for appellants.

Frederick J. Sudekum III, Lynette D. Simmons, and Florence M. Schumacher, all of Sudekum, Cassidy & Shulruff, Chtrd., of Chicago, and James F. McCluskey and Mark W. Monroe, both of Momkus McCluskey, LLC, of Lisle, for appellee.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

The trial court granted summary judgment in favor of defendant State Farm Fire and Casualty Company (State Farm) on August 16, 2007. Following denial of their motion to reconsider, plaintiffs Patricia Gatto and John Gatto (the Gattos) timely appealed, arguing that the trial court erred in concluding that the duty State Farm owed to them was limited to the terms of its insurance contract with them. For the reasons that follow, we affirm.

BACKGROUND

Plaintiffs, four condominium owners, filed suit in October 2002 against the Board of Directors of the River Shore of Naperville Condominium Association (Board), Hillcrest Management Company, a/k/a Highcrest Management Company (Hillcrest), Todd Paradis (Paradis), and State Farm. Plaintiffs brought various contract and tort claims based on water, sewage, and mold damage stemming from the Board's and Hillcrest's failure to maintain the premises. Plaintiffs twice amended the complaint, on February 20, 2003, and October 20, 2003.

This appeal involves only two of the plaintiffs, the Gattos, and one defendant, State Farm, provider of the Gattos' homeowner's insurance. The Gattos' claims against State Farm were identical in the first and second amended complaints. The trial court denied State Farm's motion under section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2006)) to dismiss the counts against it in the first amended complaint. The trial court also denied State Farm's

section 2—615 motion to dismiss the counts against it in the second amended complaint or to reconsider its order denying the first motion to dismiss. However, after lengthy discovery, State Farm moved under section 2—1005 of the Code (735 ILCS 5/2—1005 (West 2006)) for summary judgment on the counts against it, which the trial court granted on August 16, 2007. The trial court then denied the Gattos' motion to reconsider on November 8, 2007, and they timely filed this appeal on December 3, 2007.

At issue are three counts of the second amended complaint: count VIII for fraudulent concealment, count IX for breach of fiduciary duty, and count X for negligence, all brought by the Gattos against State Farm. All arise from State Farm's investigation in September 2000 of the Gattos' insurance claim for water damage within their unit and State Farm's failure to disclose to them its discovery of mold in the attic. While investigating the Gattos' claim, a State Farm investigator viewed the attic space over their unit. Mrs. Gatto was present at the time and held the ladder for the investigator, but she did not look into the attic herself. When the investigator came down, he told Mrs. Gatto that the roof was leaking. Although he also observed and photographed mold in the attic, he did not tell Mrs. Gatto about the mold. Rather, he asked her for the contact information for the condominium management company, which she provided. The investigator also told Mrs. Gatto that he "would take care of it." In October 2000, State Farm informed the Board and Hillcrest of the leak and mold, via letter and photographs. State Farm subsequently paid the Gattos' claim for water damage.

The parties agree that, pursuant to the declaration of condominium ownership, the roof and attic were common areas, which the Board, through Hillcrest, was responsible for maintaining. The condominium unit owners paid monthly dues and also received special assessments as needed to cover the costs of repairs. The Board was responsible for securing insurance for the common areas, which was to include each unit owner as an additional insured. State Farm did not insure the common areas.

State Farm did, however, insure the Gattos' individual unit and its contents, through a homeowner's policy. This insurance contract provided that State Farm had the right, but not the obligation, to conduct investigations and report the results to the insured; however, any inspections "relate[d] only to insurability and the premiums to be charged." The contract further provided that State Farm did not:

"a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

d. warrant that conditions comply with laws, regulations, codes or standards."

Although the complaint acknowledged the existence of this insurance contract, the Gattos argue that the allegations in counts VIII, IX, and X against State Farm sounded in tort, not in contract.

## ANALYSIS

The Gattos argue that the trial court's orders denying State Farm's motions to dismiss were inconsistent with its order granting summary judgment in favor of State Farm. They also contend that the trial court erred in limiting State Farm's duty to the terms of the insurance contract. Finally, the Gattos maintain that State Farm's conduct gave rise to extracontractual duties to disclose to them the mold growing in the attic and that a grant of summary judgment based on lack of duty was therefore erroneous. We disagree.

■ We first address the Gattos' contention that the trial court was inconsistent in denying State Farm's motions to dismiss and then granting its motion for summary judgment. A grant of summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits on file demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). If reasonable persons can draw different inferences from the undisputed facts or if material facts are disputed, summary judgment is inappropriate. *Williams*, 228 Ill. 2d at 417. In contrast, a motion to dismiss brought pursuant to section 2—615 of the Code only tests the legal sufficiency of a pleading. *Emery v. Northeast Illinois Regional Commuter R.R. Corp.*, 377 Ill. App. 3d 1013, 1019 (2007). A cause of action should not be dismissed unless it appears that no set of facts can be proved that will entitle the plaintiff to recover. *Kelley v. Carbone*, 361 Ill. App. 3d 477, 480 (2005).

On October 6, 2003, in denying State Farm's first motion to dismiss, the trial court found that the counts had been "sufficiently pled." Similarly, in denying the second motion to dismiss, the trial court stated:

"The circumstances have been alleged that if proven, could possibly take this out of the—of a contractual relationship and create a special relationship which may give rise to a fiduciary duty.

We're at the pleading stages now, *** there are sufficient allegations to withstand a motion to dismiss."

However, after consideration of the material produced in discovery, on August 16, 2007, the trial court found that there was no "longer a question of material fact" and that, "as a matter of law, the motion for summary judgment must be granted."

The trial court's decisions were not inconsistent; they simply reflected the differences inherent in the two types of motions. At the pleading stage, the trial court allowed for the possibility that the Gattos could establish a factual basis to support a finding that State Farm owed them a duty outside the insurance contract; however, after reviewing the depositions and documents obtained in discovery, the trial court decided that the Gattos had failed to establish such a factual basis. See *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002) ("Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment").

We turn now to the Gattos' argument that the trial court erred in granting summary judgment because it limited State Farm's duty to the terms of the insurance contract. In reviewing a grant of summary judgment, the appellate court will construe the record strictly against the movant and liberally in favor of the nonmoving party. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). We review a grant of summary judgment *de novo*. *Forsythe*, 224 Ill. 2d at 280. Summary judgment should be allowed "only where the right of the moving party is clear and free from doubt." *Williams*, 228 Ill. 2d at 417.

The Gattos' claims against State Farm were each based on the fact that State Farm failed to disclose the presence of mold in the attic. Each count—fraudulent concealment, breach of fiduciary duty, and negligence—sounded in tort and required the Gattos to demonstrate that State Farm owed them a duty. See *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 762 (2004) ("to state a claim for fraudulent concealment, a plaintiff must allege *** that the defendant concealed a material fact when it was under a duty to disclose to the plaintiff"); *Overbey v. Illinois Farmers Insurance Co.*, 170 Ill. App. 3d 594, 605 (1988) ("Absent a fiduciary relationship, there is no basis for a cause of action alleging breach of fiduciary duty"); *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 745-46 (2005) (to survive a motion for summary judgment in a negligence action, "the plaintiff must set forth sufficient facts to establish a duty owed by defendants to the plaintiff"). The existence of a duty generally is a question of law and, therefore, may be resolved on a motion for summary judgment. *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 154 (1992).

In granting summary judgment for State Farm, the trial court stated: "In this case, the duty of State Farm is, by law, limited to the terms of the insurance contract. I don't believe that there is any other duty that is germane in this case." The Gattos make no argument

that State Farm had a duty under the insurance contract to disclose the presence of mold. Instead, they maintain that the trial court erred in limiting State Farm's duty to the terms of the contract, because State Farm's conduct during its investigation created extracontractual duties to disclose the presence of mold in the attic. We disagree.

■ Before addressing the Gattos' contentions of how State Farm's conduct gave rise to extracontractual duties, we address their contention that the trial court erroneously held that the mere existence of the insurance contract precluded State Farm from being liable for torts separate and distinct from the contract. The Gattos rely on *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996), in arguing that the existence of an insurance contract does not preclude a plaintiff from bringing claims against the insurer for torts, separate and distinct from the contract. In *Cramer*, the supreme court stated that "an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action." *Cramer*, 174 Ill. 2d at 528. A plaintiff must, however, "actually allege[ ] and prove[ ] the elements of a separate tort." *Cramer*, 174 Ill. 2d at 528. Here, the trial court did not, despite the Gattos' contention, find that State Farm's duty was necessarily limited because a contract existed but, rather, found that the Gattos failed to present a genuine issue of material fact regarding duties State Farm may have owed the Gattos outside the contract. In other words, upon review of the pleadings, depositions, and other discovery documents, the trial court found that the Gattos failed to present a factual basis that could meet the *Cramer* standard of "alleg[ing] and prov[ing] the elements of a separate tort" (*Cramer*, 174 Ill. 2d at 528).

We now turn to the Gattos' argument that State Farm had extracontractual duties to disclose the presence of mold. The Gattos maintain that extracontractual duties existed because: (1) State Farm's disclosure of the leaky roof constituted a "half-truth," which gave rise to a duty to disclose the full truth; (2) State Farm's decision to exercise its contractual right to investigate created a duty to do so pursuant to the standards articulated in its operating guide, including disclosure of mold; (3) State Farm voluntarily assumed a duty of reasonable care, including disclosure of mold, when it undertook to investigate the attic; and (4) the Gattos' trust and confidence in the State Farm investigator placed State Farm in a position of influence and superiority over the Gattos, with a corresponding fiduciary duty. We address each in turn.

### Partial Disclosure Compels Full Disclosure

■ The Gattos argue that the disclosure by the investigator that the roof was leaking gave rise to an affirmative duty to disclose "the

whole truth," *i.e.*, the presence of mold. In support of this argument, the Gattos cite several cases, all involving fraud or fraudulent concealment claims. In *Union National Bank & Trust Co. of Joliet v. Carlstrom*, 134 Ill. App. 3d 985, 989 (1985), the appellate court held that "a party may assume a duty to disclose information accurately by its conduct." In *Carlstrom*, the plaintiff bank sued Ms. Carlstrom as the guarantor of a loan obtained by her ex-husband. *Carlstrom*, 134 Ill. App. 3d at 988. During the course of the dissolution of the Carlstroms' marriage, the bank provided to their respective attorneys detailed descriptions of the Carlstroms' assets and liabilities, for the purpose of reaching a property settlement. *Carlstrom*, 134 Ill. App. 3d at 988. The attorneys specifically asked the bank for " 'everything' relating to the Carlstrom's [*sic*] assets." *Carlstrom*, 134 Ill. App. 3d at 990. Yet, the bank failed to disclose that Ms. Carlstrom had guaranteed a loan obtained by her husband while the Carlstroms were still married. *Carlstrom*, 134 Ill. App. 3d at 988. Years after the dissolution and after Mr. Carlstrom died insolvent, the bank attempted to collect the loan balance from Ms. Carlstrom. *Carlstrom*, 134 Ill. App. 3d at 988. Under the doctrine of equitable estoppel, the court held that the bank was precluded from collecting, because it had breached its duty to disclose the guaranty during the property settlement negotiations. *Carlstrom*, 134 Ill. App. 3d at 989.

Similarly, in *Mitchell v. Skubiak*, 248 Ill. App. 3d 1000, 1005 (1993), the appellate court held that, while silence alone does not generally constitute fraud in a business transaction, "[s]ilence accompanied by deceptive conduct or suppression of material facts results in *active concealment* and it then becomes the duty of a person to speak." (Emphasis in original.) Accordingly, the court held that the defendant sellers of a residential home had a duty to disclose that faulty repairs had been made to the roof—the whole truth—when they explained cracks in the ceiling as caused by changes in humidity and temperature—a partial truth. *Mitchell*, 248 Ill. App. 3d at 1005-06.

Likewise, "concealment of a material fact during a business transaction is actionable if 'done "with the intention to deceive under circumstances creating an opportunity and duty to speak." ' [Citation.]" *W.W. Vincent*, 351 Ill. App. 3d at 762. In *W.W. Vincent*, during a due diligence investigation conducted in preparation for a stock purchase agreement, the defendant disclosed the half-truth that Vincent—the company whose stock was the subject of the purchase agreement—was a party to a general agents contract, which the defendant listed as an asset of Vincent's. *W.W. Vincent*, 351 Ill. App. 3d at 754, 762. In fact, the defendant knew that Vincent had previously assigned its rights in the contract; thus, the contract could no longer be

characterized as an asset. *W.W. Vincent*, 351 Ill. App. 3d at 762. The appellate court reversed the trial court's dismissal of the plaintiffs' fraudulent concealment count, holding that the defendant "not only misled the plaintiffs, but imposed upon itself a duty to disclose the assignment." *W.W. Vincent*, 351 Ill. App. 3d at 762.

In the cases cited by the Gattos, the appellate court held that the defendants' conduct had given rise to a duty to accurately disclose material facts relevant to the plaintiffs' requests. Here, State Farm did accurately disclose all material facts related to the Gattos' request to investigate water damage within their condominium unit. The fact that the roof was leaking in the attic was material to that claim because the leak was the source of the water infiltration into the Gattos' unit. However, the mold within the attic, an area uninsured by State Farm, was not material to the water damage claim because it did not cause the water damage. Therefore, unlike *Carlstrom, Mitchell*, and *W.W. Vincent*, where the defendants failed to accurately disclose material facts relevant to the plaintiffs' requests, here, the State Farm investigator disclosed everything he found that was material to the claim at issue. Consequently, State Farm's disclosure of the leaking roof did not give rise to a duty to disclose the presence of mold in the attic.

## State Farm Operating Guide

■ The Gattos next contend that, when State Farm exercised its right to investigate under the insurance contract, it also assumed a duty to investigate according to the standards articulated in its operating guide. State Farm's operating guide provided that "[e]vidence of mold should be noted and discussed with the insured." It further stated that "[d]elays [in remediation] usually result in additional damage if the conditions for continued mold growth are present." The guide also addressed the importance of communication with the insured regarding "what the investigative process will be, what coverage may apply," and recited that the insureds "should be advised of our investigative findings." Despite the fact that the guide addressed the disclosure of mold, it did not impose a duty on State Farm to disclose the mold in the present case.

" 'Where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines.' " *Shank v. Fields*, 373 Ill. App. 3d 290, 296-97 (2007), quoting *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 238 (1996); see *Fillpot v. Midway Airlines, Inc.*, 261 Ill. App. 3d 237, 244 (1994) (affirming the trial court's grant of summary judgment for the defendant and holding

that the defendant's policy manual, which directed employees to keep salt or other abrasives near the gate to keep the walkways clear, did not impose a duty on the defendant). The Gattos cite *Rice v. White*, 374 Ill. App. 3d 870 (2007), in support of their contention that State Farm's internal policies created a duty to disclose the mold to them. *Rice* involved a wrongful death suit stemming from a shooting at a party. *Rice*, 374 Ill. App. 3d at 872. The plaintiff, the mother of the decedent, alleged that the defendant hosts were negligent. *Rice*, 374 Ill. App. 3d at 872. The hosts had created and distributed 100 to 200 flyers announcing their party. *Rice*, 374 Ill. App. 3d at 873. The flyer stated in part: " 'We will check for weapons.' " *Rice*, 374 Ill. App. 3d at 873. Based on this flyer, the appellate court held that the defendants had voluntarily assumed a duty to check the party guests for weapons as they entered. *Rice*, 374 Ill. App. 3d at 884-85.

*Rice* is distinguishable from the instant case. In *Rice*, the defendants acted affirmatively in distributing to prospective party guests a flyer announcing a voluntary assumption of the duty to check for weapons. That flyer is not analogous to State Farm's internal policies articulated in its operating guide for the use of its employees, in that there is no evidence that State Farm distributed it to the Gattos or other insureds or otherwise announced to anyone other than its employees that it was assuming the duty of disclosing mold. The Gattos do not even contend that they were aware of the existence of the operating guide prior to discovery. Moreover, in *Rice*, the plaintiff testified that she had been influenced by the defendants' flyer when deciding to allow her daughter to attend the party. *Rice*, 374 Ill. App. 3d at 877. In contrast, the Gattos do not claim that they contracted with State Farm because of the contents of its operating guide. Consequently, *Rice* provides no basis for deviating from the rule that internal guidelines do not create a duty.

The directives quoted by the Gattos were contained in the section of the operating guide addressing "claims involving mold, mildew, or other types of fungi." As such, they were inapplicable in the present case because the insurance claim being investigated related to water damage, not mold. Moreover, the mold in the attic did not cause the water damage suffered by the Gattos; the leaking roof did, and that was disclosed to the Gattos. In addition, State Farm's operating guide did not apply to the mold here because State Farm did not insure the attic where the mold was located. Thus, the investigator was not handling a claim involving mold and was therefore not required, even by internal standards, to disclose the presence of mold to the Gattos. Accordingly, we find no duty imposed by State Farm's operating guide.

## Voluntary Undertaking Theory

■ The Gattos also maintain that State Farm voluntarily assumed a duty of due care when its agent investigated their attic and told Mrs. Gatto that he "would take care of it." The voluntary undertaking theory is articulated in section 323 of the Restatement (Second) of Torts (Restatement (Second) of Torts §323 (1965)) and has been adopted by our supreme court. See *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32-35 (1992) (applying the voluntary undertaking theory and noting that section 323 of the Restatement (Second) of Torts was "of particular relevance"). Section 323 states:

> " 'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.' " *Frye*, 153 Ill. 2d at 32, quoting Restatement (Second) of Torts §323 (1965).

Courts narrowly construe the theory, however, and limit the scope of the duty to the extent of the undertaking. *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 427-28 (2008). For example, the Chicago Housing Authority, in voluntarily hiring a security company to patrol the premises, did not assume a duty to protect the decedent, a social guest, from criminal conduct and could have been liable at most for negligent hiring. *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 209-10 (1979); see also *Frye*, 153 Ill. 2d at 34 (holding that the defendant pharmacist had undertaken a duty to accurately warn of a drug's side effects with respect to the warning actually given, but not a duty to warn of all possible side effects of the medication).

We reject the Gattos' argument that State Farm assumed a duty to disclose the presence of mold by voluntarily undertaking to conduct an investigation. State Farm investigated the attic to settle the water damage claim brought by the Gattos under the insurance contract between them. The investigation was not a voluntary undertaking because State Farm was required by contract to resolve the claim. However, assuming *arguendo* that State Farm could have resolved the claim without an investigation such that the investigation was a voluntary undertaking, the extent of that undertaking was to resolve the claim under the contract. Consequently, the extent of the investigation was to determine the amount of damage payable under the contract that covered water damage within the Gattos' unit. Thus,

State Farm could be liable only for negligently investigating the water damage claim, not for nondisclosure of mold that did not cause the water damage and that was located in an area that State Farm did not insure.

The Gattos also contend that State Farm voluntarily assumed a duty to disclose the mold when the investigator said he "would take care of it." The Gattos take the investigator's comment out of context. In her deposition, Mrs. Gatto explained that when the investigator came down from the attic:

> "He asked me if I had the name of the management company for the building and the address and had I had correspondence with them about water before, which there were two previous claims by the tenant downstairs against us for water.
>
> * * *
>
> And I gave him the address and a copy of a letter that I had written to [Hillcrest]***. *** He told me he would take care of it. He would contact the management company and they would take care of it and we would have a check for our damages."

In saying he would "take care of it," the State Farm investigator did not voluntarily assume a duty to disclose the mold to the Gattos. At most, the investigator's comment imposed a duty to do what he said he would—namely, inform Hillcrest of the water damage problem. See *Frye*, 153 Ill. 2d at 32 ("duty of care to be imposed upon a defendant is limited to the extent of its undertaking"). Accordingly, neither State Farm's investigation—voluntary or not—nor the investigator's comment imposed a duty to disclose the presence of mold to the Gattos.

### Fiduciary Duty Based on Special Circumstances

■ Finally, the Gattos assert that State Farm owed them a fiduciary duty based upon its investigator's knowledge and expertise and Mrs. Gatto's corresponding trust in him. "[I]t is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Martin v. State Farm Mutual Automobile Insurance Co.*, 348 Ill. App. 3d 846, 850-51 (2004). A fiduciary duty may be created, however, "where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Martin*, 348 Ill. App. 3d at 851. "This position of superiority may arise by reason of friendship, agency, or experience." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996). This type of relationship can give rise to a duty to disclose material facts. *Connick*, 174 Ill. 2d at 500. Nevertheless, if the relationship between the parties is not a fiduciary one as a matter of law, then the party alleging a fiduciary relationship bears the burden of pleading

and proving it by clear and convincing evidence. *Martin*, 348 Ill. App. 3d at 851. "[S]ignificant dominance and superiority [are] necessary to establish a fiduciary relationship." *Martin*, 348 Ill. App. 3d at 852.

*Martin* is instructive. In *Martin*, the appellate court affirmed the dismissal of the plaintiffs' complaint, which was based on various legal theories, because the plaintiffs failed to adequately plead a fiduciary relationship giving rise to a duty to disclose. *Martin*, 348 Ill. App. 3d at 851. The plaintiffs were Marisa and Adam Martin. *Martin*, 348 Ill. App. 3d at 848. Marisa was involved in a car accident with Mr. Beebe; both the Martins and Beebe were insured by State Farm in separate and unrelated automobile policies. *Martin*, 348 Ill. App. 3d at 848. The Martins brought a third-party claim against Beebe for repair of their vehicle under Beebe's policy. *Martin*, 348 Ill. App. 3d at 848. After State Farm, as Beebe's insurer, settled that claim with the Martins, the Martins filed suit against State Farm, alleging that State Farm breached its duty to disclose the material fact that Beebe's policy included additional coverage available to the Martins for the diminished value of their automobile. *Martin*, 348 Ill. App. 3d at 849. The appellate court held that State Farm had no such duty despite the Martins' allegations that State Farm had told them that it would take care of their claim and that they did not need to hire an attorney. *Martin*, 348 Ill. App. 3d at 851-52. Specifically, the court held that the Martins never alleged "that State Farm was in a position of such superiority and influence by reason of friendship, agency, or experience," and it also rejected the Martins' "conclusory assertion" that State Farm had acted as their agent in settling their claim against Beebe. *Martin*, 348 Ill. App. 3d at 851-52. The court concluded that, "[t]o the extent plaintiffs intended to claim a fiduciary duty arose from particular circumstances, it was incumbent upon them to identify those circumstances and plead them with specificity." *Martin*, 348 Ill. App. 3d at 852.

As the Martins failed to plead with specificity particular circumstances that would give rise to a fiduciary duty, here, by the summary judgment stage, the Gattos had failed to provide a factual basis for State Farm's significant dominance and superiority sufficient to create a genuine issue of material fact regarding a fiduciary duty. Like the plaintiffs in *Martin*, the Gattos made only a conclusory allegation that the investigator had knowledge and expertise in investigating mold. The Gattos also maintained that they trusted State Farm and its investigator when he told Mrs. Gatto that he "would take care of it." Ignoring the fact that the Gattos took this comment out of context, and even assuming the investigator's expertise and the Gattos' trust and confidence in him and State Farm, the Gattos failed to allege facts

that would demonstrate State Farm's corresponding dominance and superiority over them. The *Martin* court held that State Farm's representation to the Martins that it "would take care of their property damage claim and that there would be no need to hire an attorney" did "not, in and of itself, create a fiduciary duty *** to disclose additional coverage." *Martin*, 348 Ill. App. 3d at 851. Although at a later stage of the case than *Martin*, the Gattos had shown nothing more than the Martins had. Accordingly, summary judgment was appropriate here because the Gattos failed to present a genuine issue of material fact as to whether a duty existed, and, without a showing of duty, State Farm was entitled to judgment as a matter of law. See *Overbey*, 170 Ill. App. 3d at 605 ("Absent a fiduciary relationship, there is no basis for a cause of action alleging breach of fiduciary duty").

The facts in the instant case are even less likely to establish a fiduciary duty than those in *Martin*. Unlike *Martin*, where the Martins would have had no way of knowing what coverage Beebe had, the Gattos had access to the attic space, as it was right outside their back door, and they could have discovered the mold themselves. Approximately 16 months passed from the State Farm inspection in September 2000 to the Gattos' discovery of the mold in the attic in February 2002. During that time, they continued to have problems with water infiltration, because the Board and Hillcrest did not repair the roof until August or September 2002. Thus, after State Farm told the Gattos that the roof was leaking and paid their water damage claim, they continued to experience problems yet did not even look into the attic to which they had unhindered access. Overall, these circumstances belie the Gattos' argument that State Farm was in a position of dominance and superiority, let alone significant dominance and superiority. Accordingly, we see no justification for finding that State Farm owed a fiduciary duty to the Gattos.

The Gattos additionally argue that there was a genuine issue of material fact as to whether an agency relationship existed between the Gattos and the Board or Hillcrest, such that a grant of summary judgment was inappropriate. According to the Gattos, the disclosure of the mold to the Board and Hillcrest did not qualify as disclosure of the mold to them, because there was no evidence that the Board or Hillcrest was their agent. We need not address this contention since we hold that State Farm had no duty to disclose in the first place.

The Gattos also contend that State Farm failed to meet its burden of proof by failing to attach to its motion for summary judgment its October 2000 letter to the Board and Hillcrest. The trial court granted State Farm summary judgment based on its finding that the Gattos

failed to raise a genuine issue of material fact as to any extracontractual duty of State Farm to disclose. Therefore, the letter was unnecessary to the trial court's disposition of the motion, because the letter was only possible evidence of State Farm's disclosure to the Gattos, through the Board and Hillcrest, not evidence of whether State Farm had a duty to disclose. Thus, this argument is without merit.

For the reasons given, we affirm the trial court's grant of summary judgment.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.