# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Claimsone v. Professional Property Management, LLC*, 2011 IL App (2d) 101115

---

| | |
|---|---|
| Appellate Court Caption | CLAIMSONE, Individually and as Subrogee of Tri-County Opportunities and Lynn Brome, Plaintiff-Appellant, v. PROFESSIONAL PROPERTY MANAGEMENT, LLC, UNKNOWN OWNERS OF BLACKHAWK APARTMENTS, and JANIS PUMFREY, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-1115 |
| Filed | September 12, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a subrogation action by the workers' compensation insurer of the employer of a home-care provider who fell on the snow- and ice-covered stairway to her client's apartment, the trial court properly entered summary judgment for the apartment management company on the ground that the management company did not voluntarily undertake a duty to remove the natural accumulation of snow and ice where the snowfall was the first of the season, the injured home-care provider noticed the snow on the stairs, plaintiff did not show the requisite reliance on the management company's prior performance in cleaning the stairs, and the management company's contract did not expressly require the company to remove the snow and ice. |
| Decision Under Review | Appeal from the Circuit Court of Ogle County, No. 07-L-54; the Hon. Michael T. Mallon, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Paul A. Tsukuno, of Inman & Fitzgibbons, Ltd., of Chicago, for appellant. |
| | Daniel L. Polsby, of Dowd & Dowd, Ltd., of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Claimsone, provided workers' compensation coverage to Tri-County Opportunities and its employee, Lynn Brome. After Brome slipped and fell on a rear apartment staircase that was covered with snow and ice, plaintiff, as subrogee, sued defendants, Professional Property Management, LLC (an apartment management company), Blackhawk Apartments, and Janis Pumfrey (the apartment resident who had hired Brome), alleging that they breached their duty of reasonable care in maintaining the subject property and, as a result, directly and proximately caused Brome's injuries. Defendants moved for summary judgment, arguing that they had no duty to remove natural accumulations of snow and ice from the premises. The trial court granted defendants' motion. Plaintiff appeals. We affirm.

¶ 2                               I. BACKGROUND

¶ 3     On December 15, 2005, Lynn Brome, who worked for Tri-County Opportunities, was performing general housekeeping and cooking duties for Janice Pumfrey, who resided at Blackhawk Apartments. Brome slipped and fell while descending a rear staircase that was covered with snow and ice. Brome subsequently filed a workers' compensation claim and received benefits.

¶ 4     On December 14, 2007, plaintiff filed a subrogation complaint against defendants (820 ILCS 305/5 (West 2006)), alleging that it provided workers' compensation coverage to Tri-County Opportunities and Brome (Tri-County's employee) and had the right to bring a cause of action against the defendants, who had legal liability for damages to Brome, because Brome failed to institute her own cause of action. Plaintiff further alleged that defendants were negligent in failing to remove snow and ice from the premises and that, as a direct and

proximate result, Brome was injured.[1]

¶ 5    On August 5, 2010, defendants jointly moved for summary judgment, arguing that they had no duty to remove snow and ice that had naturally accumulated on the subject property's rear staircase. On September 20, 2010, plaintiff filed a response, arguing that defendants had a duty to remove the snow and ice because: (1) defendants voluntarily assumed a duty to maintain the premises free of snow and ice (in recognition that it was not the tenants' responsibility to clear their own staircases); or (2) a maintenance/caretaker agreement between Professional Property Management and Michael Gilroy, the caretaker/site manager, provided for removal.

¶ 6    The pertinent facts in the parties' filings specifically provide as follows. Pumfrey was a resident at Blackhawk Apartments in Oregon. Each unit had two floors, and Pumfrey's unit, No. 3, had a wooden porch off of the building's second-floor rear entrance that was shared by the residents. An uncovered wooden staircase, which, as depicted in a photograph contained in the record, consisted of 13 steps, led from the porch to the ground level of the complex. Pumfrey was unable to shovel or salt her unit's back staircase because she had difficulty walking.

¶ 7    On December 15, 2002, Brome, who had been employed by Tri-County for about one year, was performing household duties for Pumfrey. Brome had worked at Pumfrey's residence for four or five months, visiting once per week; she generally worked from 8 a.m. to 10 a.m. Brome arrived at Pumfrey's apartment at 8 a.m. and accessed the unit via the rear staircase (Pumfrey had left the rear door open). According to Brome, during the previous night a "big blizzard" had occurred, which was the season's first snowfall. When Brome arrived, none of the complex's walkways or stairs had been cleared of snow, but the parking lot had been plowed. After performing her work duties for two hours, Brome exited the apartment from the rear exit, intending to take out the garbage. Typically, when Brome did the laundry or took out the garbage, she would walk out of the unit's rear door and use the rear staircase to reach ground level. She noticed that snow remained on the stairs and she threw the garbage over the landing so that she could use her hand to grasp the handrail; she was afraid of falling. As Brome descended the first or second step, she slipped on the snow. Her right leg came out in front of her and her body buckled and crashed into the railing spindles. Brome landed on her buttocks and wrenched her right arm from holding onto the railing. She got up and went down the stairs. After she threw out the garbage, she went home. Brome subsequently reported her injuries to Tri-County. She underwent medical treatment for her injuries and filed a workers' compensation claim.

¶ 8    Michael Gilroy worked for Professional Property Management as a site manager at the Blackhawk Apartments. He testified at his deposition that his duties included snow removal. Sylvia Gilroy, his wife, was also employed as a site manager at the complex (and was employed by Blackhawk Apartments) and assisted Michael in removing snow. He explained that they both cleared snow at the complex from walkways, sidewalks, and back stairs. It was

---

[1] On March 2, 2009, the trial court dismissed Pumfrey from the suit. 735 ILCS 5/2-1009 (West 2006) (addressing voluntary dismissals).

not the tenants' responsibility to remove snow from the rear staircases.

¶9     The management agreement between Blackhawk and Professional Property Management provided:

"I. Maintenance and Repair. The agent will maintain and repair Project in accordance with the management Plan and local codes, and keep it in good condition acceptable to the Owner and Rural Development at all times. This will include, but is not limited to, cleaning, painting, decorating, plumbing, carpentry, grounds care, energy conservation measures and practices; and such other maintenance and repair work as may be necessary, subject to any limitations imposed by the Owner in addition to those contained herein."

¶10    The lease agreement between Professional Property Management and Pumfrey provided in a section addressing the tenant's obligations:

"6. To keep the premises in a clean and sanitary condition, to maintain the yard, walks, porches, halls and other common areas used by the tenant(s) in a neat and orderly manner as prescribed by the owner/owner's agent, not to make any repairs or alterations without written consent of the owner/owner's agent *** and to notify the owner/owner's agent promptly of the need for any repairs to the premises."

¶11    In a section addressing management's obligations, the lease provided that management's obligations included:

"1. To maintain the buildings and any unassigned community areas in a decent, safe and sanitary condition in accordance with Rural Development regulations and any applicable local housing codes or ordinances. Failure of the owner/owner's agent to do so should be brought to the attention of the owner and/or Rural Development."

¶12    A maintenance/caretaker agreement between Professional Property Management and Michael Gilroy provided that the caretaker/site manager would:

"d. Keep sidewalks free of ice and/or snow and take bids on snow removal of driveways/parking areas as instructed by PPM. Overnight snowfall on all walks must be cleaned by 7:15 a.m. weekdays and/or weekend/holidays."

In a section specifically addressing snow removal, the agreement provided:

"a. Bids are requested in September on snow plowing of parking lots and driveways (where applicable). Bids should be forwarded to your Area Manager.

b. The Maintenance/Caretaker will keep sidewalks free of ice and snow. Contact your Area Manager for specific instructions for purchasing deicer. Apply deicer pellets to icy sidewalk areas. (If necessary, sidewalks may be contracted to outside vendors as the need arises.)"

¶13    In his deposition, Michael stated that the term "sidewalks" in the maintenance/caretaker agreement included the front and rear staircases. Sylvia testified at her deposition that her duties included snow removal, including from Pumfrey's rear staircase. She also salted and removed snow from the landing at the top of the stairs. She went to Blackhawk Apartments daily in the winter to check for snow or ice. When she began her snow removal, she started at the stairs at Pumfrey's apartment. Further, Karen Larke, Professional Property

-4-

Management's manager, who oversaw various sites for her employer, including the subject property, testified at her deposition that the Gilroys' duties included snow removal. Larke also stated that she left his methods and practices of snow removal to Michael's discretion.

¶ 14    On October 12, 2010, following hearing, the trial court granted defendants' summary judgment motion. Plaintiff appeals.

¶ 15                                    II. ANALYSIS

¶ 16    Plaintiff argues that the trial court erred in granting summary judgment to defendants, because, in its view, there was a material factual question concerning whether defendants owed Brome a duty. Plaintiff raises two alternative bases upon which a duty may be found. First, it contends that, by removing snow from the staircase over a period of years prior to Brome's fall, defendants voluntarily assumed a duty to keep the premises free of ice and snow on the day of the accident. Second, plaintiff argues that, by virtue of the snow-removal provisions in the lease and maintenance/caretaker agreements, defendants contractually assumed a duty to keep the staircase free of ice and snow. For the following reasons, we reject plaintiff's arguments.

¶ 17    Summary judgment is properly granted where "the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 73 (2000). To establish negligence, the plaintiff must prove a duty owed to it by the defendant, a breach of that duty, and an injury proximately caused by that breach. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227 (1996). Although the question whether a duty has been breached is a factual one, the existence of a duty generally presents a question of law. *Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 476 (2002). However, "if there is a dispute of material fact affecting the existence of an undertaking of a duty, summary judgment is improper." *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 995 (2005). In assessing whether a duty exists, "a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d at 227.

¶ 18    There is no common-law duty to remove natural accumulations of snow or ice. See *Galivan v. Lincolnshire Inn*, 147 Ill. App. 3d 228, 229 (1986); see also *Graham v. City of Chicago*, 346 Ill. 638, 641 (1931) (there is no duty to remove natural accumulations of ice or snow, and one is generally not liable for injuries caused by natural accumulations of ice or snow). Plaintiff argues that, under two exceptions to the general rule, defendants had: (1) previously voluntarily removed snow and ice from the premises and, as such, they had a duty to remove it (by 7:15 a.m.) on the date of the accident; and (2) a contractual duty to remove snow and ice from the premises.

¶ 19                    A. Voluntary Assumption or Undertaking of Duty

¶ 20    First, plaintiff argues that defendants owed Brome a duty of care based upon their

voluntary assumption of a duty to maintain the premises free and clear of snow and ice. Defendants, plaintiff notes, voluntarily undertook snow and ice removal from the premises on a daily basis during the winter season.

¶ 21　　The reasoning behind the general rule that a property owner has no duty to remove natural accumulations of ice and snow is "that it is unrealistic to expect property owners to keep all areas where people may walk clear from ice and snow at all times during the winter months." *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 281 (1994). One exception to this rule is a voluntary undertaking. *Bourgonje*, 362 Ill. App. 3d at 995. Under the voluntary-undertaking theory, where a person voluntarily agrees to perform a service necessary for the protection of another person or their property, a duty may be imposed on the party undertaking the service; that party must perform the service in such a manner as not to increase the risk of harm to the other person who relies on the undertaking. *Id.* at 995-96. One who is negligent in the undertaking will be held liable for the foreseeable consequences of the act if another suffers harm because they relied on the undertaking. *Id.* The voluntary-undertaking theory is derived from sections 323 (claims where there is liability to an injured party for whom the voluntary undertaking was made) and 324A (addressing liability to an injured third party for negligent performance of an undertaking) of the Restatement (Second) of Torts (Restatement) (Restatement (Second) of Torts §§ 323, 324A (1965)). *Bourgonje*, 362 Ill. App. 3d at 996. Both sections have been adopted by our supreme court. See *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992); *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 217 (1988); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 211 (1979). Section 324A applies to this case and provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) Torts § 324A (1965).

¶ 22　　The voluntary-undertaking exception applies to cases involving both nonfeasance (*i.e.*, where there is the failure by omission to perform the voluntary undertaking) and misfeasance (*i.e.*, the negligent performance of the undertaking). *Bourgonje*, 362 Ill. App. 3d at 996 (citing cases); see also *Ordman*, 261 Ill. App. 3d at 279 (in a misfeasance case, noting that, where "a duty would not otherwise arise, a duty to act reasonably may be imposed when a defendant negligently performs a voluntary undertaking"). In a case involving nonfeasance, such as this, "a plaintiff's reliance on the defendant's promise is an independent, essential element" of the case. *Bourgonje*, 362 Ill. App. 3d at 997. A plaintiff may recover for nonfeasance for a gratuitous undertaking where "the plaintiff reasonably relie[d] on the defendant's promise." *Id.* at 998. The voluntary-undertaking theory is narrowly construed. *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n, Hillcrest Management Co.*, 389 Ill. App. 3d 951, 961 (2009); see also *Frye v. Medicare-Glaser Corp.*,

153 Ill. 2d 26, 33 (1992).

¶ 23    Plaintiff argues that the facts here show a voluntary undertaking of a duty by defendants. It notes that it was the managers', not the tenants', duty to remove snow and ice from the rear staircases and that the Gilroys' duties included snow removal, which they performed in previous seasons and which included the rear staircase of Pumfrey's apartment. Plaintiff further argues that whether sufficient reliance was shown is a factual question for a jury to determine unless the material facts are undisputed.

¶ 24    Plaintiff relies on *Eichler v. Plitt Theatres, Inc.*, 167 Ill. App. 3d 685 (1988). In *Eichler*, the plaintiff sued four defendants after she slipped and fell on a natural accumulation of ice in a shopping center parking lot. Several trusts owned various contiguous parcels of land that were used for parking at the shopping center, which included a theater. The defendant trust that owned the parcel on which the plaintiff fell (Urban) and another defendant trust (Hutensky) had entered into an easement agreement that outlined their various rights; Urban agreed to keep its parcel clear of snow and ice. Urban also contracted with a defendant landscaping company (Welhausen) to perform snowplowing and removal. The trial court entered summary judgment in favor of the defendants.

¶ 25    On appeal, the court assessed the plaintiff's argument that the defendants had a duty to remove snow and ice because they had entered into a contract in which they undertook the obligation to do so. First, the court determined that Restatement section 324A applied to the case. *Id.* at 692. Next, the court assessed whether summary judgment was properly granted as to each defendant. As to Welhausen, the court held that summary judgment was appropriately granted in its favor because the company contracted to remove only snow and not ice and because the parties agreed that the ice that caused the plaintiff's fall was a natural accumulation. *Id.* As to Urban, the court held that its promise to Hutensky in the easement agreement to remove snow and ice from its parcel was sufficient for Hutensky to rely upon and that this reliance was sufficient to establish a duty on Urban's part. Accordingly, the court held that summary judgment in favor of Urban was inappropriate. *Id.* The court held that summary judgment for Hutensky was properly granted because Hutensky did not own the parcel on which the plaintiff fell and under the easement agreement each party had agreed to remove snow and ice only from its own parcel. *Id.* The court next held that summary judgment was inappropriately granted in the theater's (Plitt's) favor. *Id.* After the easement agreement was entered into, Urban and Plitt entered into a lease agreement under which Plitt accepted Urban's rights and obligations under the easement agreement. The court held that, under the lease agreement, Plitt assumed an obligation to remove snow and ice (by virtue of assuming all of Urban's obligations) and that Plitt's promise to remove snow and ice created the requisite reliance, on Urban's part, to find that Plitt had a duty. *Id.* However, the court noted that "whether Urban actually relied on the lease agreement is a question which may be further developed." *Id.* at 693. According to the court, there was an implication that Urban did not rely on Plitt's promise because Urban, not Plitt, contracted with Welhausen for snow

removal. *Id.*[2]

¶ 26 We find that plaintiff's reliance on *Eichler* is misplaced. *Eichler* is distinguishable because it involved several contracts between the defendants. In this first argument, plaintiff does not assert a contractual assumption of a duty but, rather, one that arose out of defendants' gratuitous practice of clearing the snow from the rear staircase of Pumfrey's apartment. Although it did initially determine that Restatement section 324A applied, the *Eichler* court's primary analysis focused on the defendants' various *contractual* relationships, and the contractual terms were outcome-determinative. Specifically, as to each of the defendants, the court found it critical that: Welhausen *contracted* to remove snow and not ice; in the *easement agreement*, Urban promised Hutensky to remove snow and ice from Urban's parcel; Hutensky agreed in the *easement agreement* to remove snow and ice from only its own parcel; and Plitt and Urban entered into a *lease agreement* under which Plitt accepted Urban's rights and responsibilities. *Id.* at 692-93.

¶ 27 Defendants respond that the Gilroys' gratuitous removal of snow from the stairs over a period of years prior to Brome's fall did not create a *continuing* duty to clear the stairs every time that snow naturally accumulated thereon. They urge that there is a significant distinction between voluntarily assuming a duty and performing it negligently (misfeasance) and not performing a task that has been voluntarily undertaken in the past (nonfeasance). Defendants concede that a party engaging in voluntarily removing snow owes a duty to a third party to clear the snow in a nonnegligent manner. However, they contend that imposing a duty on defendants to clear snow and ice from the rear staircase every time they accumulate imposes an unreasonable obligation.

¶ 28 Defendants rely on *Chisolm v. Stephens*, 47 Ill. App. 3d 999 (1977). In *Chisolm*, the plaintiff, a tenant, sued her landlords after she slipped and fell on a natural accumulation of ice and snow on the landlords' sidewalk. The ice and snow had not been cleared on the accident date. The plaintiff claimed that the landlords' 15-year practice of cleaning the sidewalk each morning and her reliance thereon established that the landlords had a legal duty to examine and clean the sidewalk on the morning of the accident. After disposing of the plaintiff's contract-based arguments, the court turned to the voluntary-undertaking argument and upheld summary judgment for the defendants. *Id.* at 1007. The court noted that "liability for nonfeasance in connection with a gratuitous undertaking may arise where the beneficiaries had relied on its performance." *Id.* (citing, among others, Restatement section 323). The court elaborated:

> "Reliance may reasonably be placed where there is a deceptive appearance that performance had been made, or where a representation of performance has been communicated to plaintiff by defendant, or where plaintiff is otherwise prevented from obtaining knowledge or substitute performance of the undertaking. But, to justify reliance, plaintiff must be unaware of the actual circumstances and not equally capable

---

[2]The court further held that there was a factual question as to whether Urban or Plitt was negligent in removing ice, because the complaint (and the plaintiff's deposition) alleged that the parking area at issue was covered with ice. *Id.*

of determining such facts." *Id.*

¶ 29    The *Chisolm* court held that the requisite reliance was not present in the case and that, therefore, the defendants had no legal duty to clear the snow and ice. *Id.* at 1008. The court noted that the snow and ice had not been cleared on the accident date; the existing icy conditions were not hidden; and it was still sleeting and snowing when the plaintiff slipped and fell on the sidewalk. *Id.* Thus, the plaintiff could not have justifiably relied on the landlords' prior performance. *Id.*

¶ 30    We agree with defendants that *Chisolm* controls. As in that case, defendants here had not cleared the snow and ice from the rear staircase of Pumfrey's apartment on the morning of Brome's accident. However, as in *Chisolm*, the existing conditions were not hidden. Brome saw that the staircase had not been cleared; its condition was obvious. Indeed, Brome testified at her deposition that she noticed the snow on the stairs when she arrived and again when she exited the apartment. On that (second) occasion, she threw the garbage over the landing so that she could use her hand to grasp the handrail because she was afraid of falling. Thus, on the morning she arrived at the apartment and observed (at least twice) that the staircase had not been cleared, she could not have justifiably relied on the Gilroys' prior performance. Furthermore, Brome testified that she had worked at Pumfrey's residence for only five months and that the previous evening's snowfall was the first of the season; therefore, she could not have been aware of the Gilroys' pattern of shoveling Pumfrey's stairs. Accordingly, because plaintiff did not show the requisite reliance, we conclude that the trial court did not err in granting summary judgment to defendants.

¶ 31                     B. Contractual Assumption of Duty

¶ 32    Second, plaintiff argues that, by virtue of the lease agreement and the maintenance/caretaker agreement, defendants assumed a duty not imposed upon them by common law to keep Pumfrey's staircase free of ice and snow. For the following reasons, we reject plaintiff's claim.

¶ 33    Whether a contract imposes a legal duty presents a question of law. *Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 481 (2002). Unless the contract specifies a special meaning, we interpret its terms according to their common, generally accepted definitions. *Id.* at 481 (rejecting the plaintiff's argument that the term "supervision" encompasses snow and ice removal).

¶ 34    As previously noted, a landowner or possessor has no common-law duty to remove natural accumulations of ice or snow. *Galivan*, 147 Ill. App. 3d at 229. However, a landowner that contractually obligates itself to a tenant to remove snow and ice may be held liable to a third party for its failure to remove the accumulation. *Wells v. Great Atlantic & Pacific Tea Co.*, 171 Ill. App. 3d 1012, 1018 (1988); *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 89 Ill. App. 3d 640, 643-45 (1980).

¶ 35    In *Schoondyke*, the plaintiff fell on unplowed snow on a common sidewalk at her parents' condominium, where she resided. The plaintiff's parents paid a monthly assessment that included a charge for snow removal. The court reversed the grant of summary judgment to the defendants and held that the defendant condominium association and two defendant

corporations, by virtue of their agreement with the unit owners in the "Declaration of Condominium" and "Condominium By-Laws" (which provided for snow removal), assumed a duty that was not imposed on them by common law to remove snow from the premises. *Id.* at 645. Further, their duty extended to the plaintiff, who was a nonowner occupier of a condominium unit, because it was foreseeable that their failure to perform their contractual obligation to clear snow could harm a nonowner resident. *Id.*

¶ 36    Relying on *Schoondyke*, plaintiff points to the lease agreement's provision that the management's obligations included the responsibility to maintain the common areas in a safe condition. It further points to the maintenance/caretaker agreement provision that stated that the caretaker will keep "sidewalks" free of ice and/or snow and that overnight snowfalls must be cleaned from "all walks" by 7:15 a.m. Plaintiff also notes that Michael stated that his duties included snow removal from the complex's rear staircases. Thus, plaintiff reasons that the record supports the imposition of a duty upon defendants to remove snow and ice from the rear staircase of Pumfrey's apartment. At a minimum, it alternatively urges, the contracts are facially ambiguous and cannot be interpreted without the use of parol evidence (*i.e.*, Larke's and the Gilroys' testimony).

¶ 37    Defendants respond that none of the contracts required removal of snow and ice from the *staircase* where Brome fell. They note that only the maintenance/caretaker agreement specifically addressed snow and ice removal and that it required only that the caretaker keep the *sidewalks* free of ice and snow. Defendants urge that we not add provisions to the agreement–namely the Gilroys' testimony that their duties included snow removal from the staircases–because, in their view, the contract is unambiguous. See, *e.g.*, *Suburban Insurance Services, Inc. v. Virginia Surety Co.*, 322 Ill. App. 3d 688, 691 (2001) (if a contract is clear and unambiguous, the parties' intent must be determined solely from the contract's plain language, and extrinsic evidence outside the "four corners" of the document may not be considered). Defendants assert that, to the extent that the Gilroys engaged in additional snow removal, that conduct is more properly analyzed (and, here, rejected) under the voluntary undertaking analysis addressed in plaintiff's first argument.

¶ 38    Addressing *Schoondyke*, defendants correctly note that the case did not discuss the specific language in the contracts at issue. Therefore, other than for the purpose of stating the general rule that a landowner that contractually obligates itself to a tenant to remove snow and ice may be held liable to a third party for its failure to remove the accumulation, the case is not particularly helpful to our analysis. Defendants urge instead that *Wells* controls. In *Wells*, the plaintiff slipped and fell on ice in a grocery store parking lot and sued the store and the contractor whom the store hired to remove snow from the lot. On the day of the accident, around the perimeter of the lot, there were piles of snow that had been present for several weeks as a result of snowplowing operations. The issues on appeal were, first, whether the ice was a natural accumulation caused by the slope of the lot, combined with the manner in which the snow was plowed, and, second, whether the defendants were negligent in removing it. The court affirmed summary judgment for the defendants. *Wells*, 171 Ill. App. 3d at 1021. The court first rejected the plaintiff's claim that the ice was an unnatural accumulation. *Id.* at 1018. It next acknowledged that an owner that contractually obligates itself to a tenant to remove snow and ice may be liable to a third party for its failure to do so.

*Id.* However, after stating (without further explanation) that *Schoondyke* was factually distinguishable, the court held that the grocery store was under *no contractual obligation* to remove snow from its parking lot. *Id.* at 1018-19. Rather, it *voluntarily* assumed the duty and contracted with the contractor to perform the snow removal. *Id.* at 1019. The scope of the store's duty as to snowplowing was to refrain from performing it negligently. *Id.*[3] The court concluded that there was no evidence of negligent plowing operations. *Id.*; see also *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 582-83 (2007) (for a duty to arise on the part of a parking garage management company, its contract with the plaintiff's employer to operate and manage the lot must contain express language imposing an obligation on it to plow the parking facility; snow removal was mentioned only in the schedule of reimbursable operating expenses; the management company subcontracted with another entity for snow removal, but that contract did not impose a duty on the management company to remove snow; finally, the management company did not enter into any contract with any invitee to remove snow).

¶ 39 If we view the Gilroys' employment relationship with Professional Property Management as akin to a snowplowing contractor hired by a management company, we conclude that defendants undertook no duty to clear the rear staircase of snow and ice. *Wells* and other cases hold that "property management companies do not undertake a duty to plow their property by merely contracting with a snow removal company." *Judge-Zeit*, 376 Ill. App. 3d at 580-82 (citing *Wells* in a case where the management company's contract with the snowplowing company provided that the rooftop parking area was to be salted and plowed by 8 a.m.); *Wells*, 171 Ill. App. 3d at 1018-19 (hiring a snow removal company is not undertaking a contractual duty to remove snow; rather, it is a voluntary assumption of the duty and both the entity that hired the snow removal company and the snow removal company owed only a duty to refrain from negligently performing the snow removal; "absent evidence of an unnatural accumulation or negligent plowing operations, there is no showing of an existing duty on the part of the defendants"); see also *McBride v. Taxman Corp.*, 327 Ill. App. 3d 992, 996-97 (2002) (noting that cases that assess snow removal companies' duty to third parties hold that the duty is only to refrain from negligently removing snow by creating or aggravating an unnatural accumulation of ice or snow; further noting that the case law does not hold that a snow removal company may be liable to a third party for the failure to perform snow removal, as distinct from performing an affirmative act that creates or aggravates an unnatural accumulation of ice or snow). Accordingly, under this line of cases, if the Gilroys' function or role is viewed as a snow removal service, neither they nor Professional Property Management could be found to have contractually undertaken a duty to remove snow and ice from the staircase of Pumfrey's apartment on the day of Brome's accident.

¶ 40 Alternatively, if the Gilroys are viewed as employees (and not contractors) of Professional Property Management, standing in the management company's shoes, we again

---

[3]As to the contractor, the court held that his obligation to perform under the contract was to the grocery store and not to the plaintiff. *Wells*, 171 Ill. App. 3d at 1019. His duty to the store was to abstain from negligence in performing his job duties. *Id.*

conclude, as we explain below, that, on the day of Brome's accident, defendants owed plaintiff no duty to clear snow and ice from the rear staircase of Pumfrey's apartment. As previously noted, in cases of nonfeasance, a property owner may contractually assume a duty to a third party to remove snow and ice. *Schoondyke*, 89 Ill. App. 3d at 645. In *Eichler*, the court held that, where Urban contracted in an easement agreement with Hutensky to maintain Urban's parcel and for the " 'prompt removal of all *** snow and ice,' " the contract established a duty on Urban's part to remove the ice and summary judgment in Urban's favor was inappropriate. *Eichler*, 167 Ill. App. 3d at 688, 692. In contrast, the language contained in the contracts here imposed no such duty on defendants.

¶ 41    Here, the maintenance/caretaker agreement specifically addressed snow removal. In section 3.2, which addressed the caretaker's specific duties, it provided that the caretaker shall "[k]eep *sidewalks* free of ice and/or snow and take bids on snow removal of driveways/parking areas as instructed by PPM. Overnight snowfall on *all walks* must be cleaned by 7:15 a.m. weekdays and/or weekend/holidays." (Emphases added.) In section 4.3, which addressed snow removal, the contract provided that "The Maintenance/Caretaker will keep *sidewalks* free of ice and snow. Contact your Area Manager for specific instructions for purchasing deicer. Apply deicer pellets to icy *sidewalk areas*. (If necessary, *sidewalks* may be contracted to outside vendors as the need arises.)" (Emphases added.)

¶ 42    We conclude that the terms "sidewalks" and "all walks" clearly and unambiguously do not encompass common staircases. A "sidewalk" is defined as "a walk for foot passengers usu. at the side of a street or roadway: a foot pavement." Webster's Third New International Dictionary 2113 (1993). A "walk" is defined as "a path specially arranged or paved for walking" or "a route regularly traversed by a person in the performance of a particular activity (as patrolling, begging, or [vending])." Webster's Third New International Dictionary 2571 (1993). The foregoing definitions do not explicitly mention staircases, nor can we reasonably read them as including staircases. Therefore, we must reject plaintiff's argument that there is a material factual question precluding summary judgment as to whether a sidewalk encompasses a common staircase, or, alternatively, that we can conclude as a matter of law that defendants undertook in the contract the duty to clear the complex's staircases.

¶ 43    Finally, we also reject plaintiff's argument that either the management agreement's language obligating Professional Property Management to "maintain" the "grounds" and perform "maintenance and repair work," or the lease agreement's provision that management's obligations include the responsibility to "maintain" the common areas in a safe condition, is ambiguous because it is susceptible to multiple meanings and could include snow removal from the rear staircases. To find a duty to clear ice and snow, courts require express language imposing such a duty. See, *e.g.*, *Judge-Zeit*, 376 Ill. App. 3d at 582 ("For a duty to arise, one of these contracts [to *manage and operate* parking facilities] must contain *express* language imposing an obligation on [the management company] to *plow* the parking facility." (Emphases added.)).

¶ 44    We conclude that the trial court did not err in granting summary judgment to defendants.

¶ 45                    III. CONCLUSION

¶ 46        For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

¶ 47        Affirmed.